# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

-------------------------------------------------------x

NAJAY CUMMINGS, *Petitioner*,

v.

JOSEPH FREDEN,
in his official capacity as the Deputy Field Office
Director and Administrator of Buffalo Federal
Detention Facility.

KRISTI NOEM,
in her official capacity as the Secretary of the
Department of Homeland Security of the United
States.

PAMELA BONDI,
in her official capacity as the United States
Attorney General.

DAREN K. MARGOLIN,
in his official capacity as the Director of the
Executive Office for Immigration Review.

<div align="right">



VERIFIED PETITION FOR WRIT
OF HABEAS CORPUS PURSUANT
TO 28 U.S.C. § 2241

Civil Case No.: __25-CV-11664 W__

</div>

*Respondents*.

-------------------------------------------------------x

## **INTRODUCTION**

**1**. My name is Najay Cummings ("Petitioner").

**2**. Since I have entered the United States, I have been accorded the following immigration

status: Lawful Permanent Residency (Green Card Holder).

**3**. I am currently being detained and restrained of my liberty by the Department of Homeland

Security ("DHS") at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. I

<div align="right">Page 1</div>

have been in immigration detention since April 9, 2025.

**4**. I was served with a Notice to Appear ("NTA") on or about September 25, 2024, charging me with removability based on my conviction under New York Penal Law §§ 110/125.

**5**. As such, I have been subject to mandatory immigration detention for approximately seven months while my removal proceedings are pending.

**6**. Without intervention from this Court, my detention will indefinitely continue, as my immigration case is ongoing.

**7**. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months.

**8**. DHS has not yet conducted a bond hearing to determine whether my continued detention is justified; and the chance of them independently conducting one is ostensively and extremely low; due to 28 U.S.C. § 1226(c).

**9**. My immigration detention is unreasonably prolonged because I have been detained for more than six months without a bond hearing, and my detention will undoubtedly continue without a bond hearing unless this Court grants me relief that is unprejudicially aligned with my interests as well as DHS'.

**10**. Once it is established that immigration detention is unreasonably prolonged, the burden unequivocally shifts to the government to prove by clear and convincing evidence that my continued detention is warranted either because I am currently and incontrovertibly dangerous or because I pose a flight risk.

**11**. Accordingly, I respectfully request that this Court issue a writ of habeas corpus and order

Page 2

the Respondents to immediately, or at a set time by this Court, release me from their custody because the Respondents cannot establish by clear and convincing evidence that my indefinite and continued detention is warranted, and continuing to detain me violates my constitutional due process rights under the Fifth Amendment. In the event that this Court refuse to order me release as requested, *supra*, I respectfully request this Court order a bond hearing where the Respondents unequivocally bears the burden to proof, by clear and convincing evidence, that my indefinite and continued detention is necessary to prevent flight or danger to the community.

## **PARTIES**

**12**. Petitioner, Najay Cummings, is detained at Buffalo Federal Detention Facility.

**13**. Respondent Joseph Freden is sued in his official capacity as the Deputy Field Office Director and Administrator of Buffalo Federal Detention Facility, at which Petitioner is currently detained.

**15**. Kristi Noem is sued in her official capacity as the Secretary of the Department of Homeland Security of the United States, an agency of the US government, responsible for administration and enforcement of the nations' immigration laws.

**16**. Pamela Bondi is sued in her official capacity as the United States Attorney General, who is responsible for the actions of the US Department of Justice, including its sub-agency the Executive Office for Immigration Review, of which the US Immigration Courts are a part.

**17**. Daren K. Margolin is sued in his official capacity as the Director of the Executive Office for Immigration Review ("EOIR"), an agency within the Department of Justice. EOIR administers the Immigration Courts which are responsible for, *inter alia*, the holding of bond hearings for detained non-citizens, including permanent residents such as Petitioner.

## JURISDICTION AND VENUE

**18**. Jurisdiction is proper under the U.S. Constitution, U.S. CONST. art. I § 9, cl. 2 ("Suspension Clause"), and federal statutes 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 2241 (habeas corpus); and 28 U.S.C. § 1651 (All Writs Act).

**19**. Additionally, this Court has jurisdiction to grant injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2202.

**20**. Federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging their detention by DHS, see *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

**21**. Furthermore, while 8 U.S.C. § 1226(e) bars judicial review of the discretionary denial of bond, it does not bar constitutional challenges to the bond hearing process. See, e.g., *Medley v. Decker*, No. 18-CV-7361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019) (federal district courts have habeas jurisdiction to hear challenges to constitutional adequacy of bond hearing procedures); see also *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[C]laims that the [bond] process itself was constitutionally flawed are 'cognizable in federal court on habeas . . . .'") (quoting *Gutierrez–Chavez v. INS*, 298 F.3d 824, 829 (9th Cir.2002)).

**22**. Venue is proper in the U.S. District Court for the Western District of New York under 28 U.S.C. § 1391 because the Defendant is in this District; I am currently being detained within this District at the Buffalo Federal Detention Facility in Batavia, New York; and a substantial part of the events giving rise to the claims in this action took place in this District.

**STATUTORY FRAMEWORK**

**23**. Congress has authorized DHS to mandatorily detain noncitizens who are convicted of certain crimes without the opportunity for a bond hearing. 28 U.S.C. § 1226(c).

**24**. The statute itself is silent on whether DHS is authorized to detain such noncitizens subject to mandatory detention for the entirety of their removal proceedings, regardless of how long such proceedings may take. See *id.*

**25**. When a person has ongoing immigration proceedings, immigration detention without a bond hearing is considered unreasonably prolonged in violation of the Due Process Clause of the Fifth Amendment if such detention exceeds six months. *Matos v. Barr*, 509 F.Supp.3d 3, 11 (W.D.N.Y. 2020).

**EXHAUSTION OF REMEDIES**

**26**. There is no statutory exhaustion requirement for a petition challenging immigration detention. See *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 538 (S.D.N.Y. 2014).

**27**. I am not required to exhaust administrative avenues to challenge my detention because the statutory authority subjects me to mandatory detention and, as such, does not provide me with any meaningful administrative options with which to challenge my detention. See 8 U.S.C. § 1226(c); see also *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) ("The exhaustion requirement is excused when exhaustion would be futile because the administrative procedures do not provide an adequate remedy.") (citing *Honig v. Doe*, 484 U.S. 305, 327 (1988)). Notwithstanding the presumed futility, I insistingly requested considerations for release from the Office of the Assistance Chief Counsel for DHS; which has gone unanswered, or otherwise undetermined, at the time of submission of this petition. See Exhibit

A – Letter Requesting Relief.

## **LEGAL ARGUMENT**

### **Procedural Due Process Requires that I Be Released or, at Minimum, Afforded a Constitutionally Adequate Bond Hearing at Which the Government Must Justify My Continued Detention; to Which Any Reasonable Person Could Agree**

**28**. The U.S. Supreme Court's opinion in *Zadvydas v. Davis* stands for the proposition that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law." U.S. CONST. amend. V. Prolonged detention requires due process protections for individuals, even those whose "presence in this country is unlawful." *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Thus, as the Court noted, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." *Zadvydas*, 533 at 690.

**29**. By subjecting noncitizens like myself to mandatory immigration detention, 8 U.S.C. § 1226(c) permits indefinite detention, thus raising the very serious constitutional problem that the Court had cautioned against in *Zadvydas*.

**30**. Although the Supreme Court ruled in *Demore* that mandatory detention pending removal proceedings is not unconstitutional per se, the Court left open the question of whether the duration of such mandatory detention is subject to constitutional constraints. Such constitutional constraints can be found in the Fifth Amendment of the U.S. Constitution, which, as the Court recognized in *Demore*, "entitles [noncitizens] to due process of law in deportation proceedings."

Page 6

538 U.S. at 523 (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

**31**. While the Supreme Court held in *Jennings v. Rodriguez*, 583 U.S. 281, 138 S. Ct. 830 (2018), that § 1226(c) does not require bond hearings in prolonged detention cases as a matter of statutory construction, it did not express any views on whether the U.S. Constitution itself requires a bond hearing, leaving it to the lower courts to address the issue of what process is due when detention is unreasonably prolonged.

## My Indefinite Detention Has Become Unreasonably Prolonged and Will Continue Without Equitable Intervention From This Court.

**32**. In the wake of *Jennings*, the Western District of New York ("WDNY") has developed a two-step inquiry for evaluating procedural due process challenges to prolonged immigration detention. *Hemans v. Searls*, No. 18-CV-1154, 2019 WL 955353, at *5 (W.D.N.Y. Feb. 27, 2019).

**33**. In the first step of the inquiry, the Court considers whether the detention has been unreasonably prolonged by weighing several distinct factors. *Id*. If the Court finds that the detention was unreasonably prolonged, it proceeds to step two of the inquiry, which involves identifying what process is due by considering the factors outlined in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *Hemans*, 2019 WL 955353, at *5., see also *Hechavarria v. Sessions*, No. 15-CV-1058 (LJV), 2018 WL 5776421, at *7-9 (W.D.N.Y. Nov. 2, 2018). If the government has failed to provide the detained person with the procedural safeguards dictated by the Mathews factors, then the detained person's continued detention violates procedural due process. *Hechavarria*, 2018 WL 5776421 at *8-9.

**34**. To determine whether one's immigration detention is unreasonably prolonged, courts in this district have adopted the following multi-factor test articulated in *Cabral v. Decker*:

> [T]he length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018).

**35**. The first factor, the length of immigration detention, is the most important factor. *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 797 (W.D.N.Y. 2019) (quoting *Bermudez Paiz v. Decker*, No. 18-CV-4759 (GHW) (BCM), 2018 WL 6928794, at *13 (S.D.N.Y. Dec. 27, 2018)).

**36**. Courts in the Second Circuit have "generally been skeptical of prolonged detention of removable immigrants, without process, lasting over six months," *Ranchinskiy*, 422 F. Supp. 3d at 797 (quoting *Lett v. Decker*, 346 F. Supp. 3d 379, 387 (S.D.N.Y. 2018)).

**37**. Moreover, in *Demore*, the Supreme Court heavily relied on the average length of detention for people detained under § 1226 as support for its constitutionality, reasoning that a six-week detention was the average and that a five-month detention counts as an outlier. 538 U.S. at 530.

**38**. I have been detained since April 9, 2025, and have been detained for over six months. Since the length of my detention exceeds six months, the first factor incontestably weighs in my favor when determining whether my detention has become unreasonably prolonged.

**39**. The second factor considered is the question of which party is responsible for the detention being unreasonably prolonged. *Cabral*, 331 F. Supp. 3d at 261.

**40**. While a detained person who is found to be "abusing the processes provided to him" would bear the responsibility of their detention being prolonged, a detained person who "simply made use of the statutorily permitted appeals process" cannot be made responsible for his prolonged detention. *Hechavarria v. Sessions*, 891 F. 3d 49, 56 n.6 (W.D.N.Y. 2018); see also *Hechavarria*, 2018 WL 5776421 at *7.

**41**. An immigration judge ordered me deported on October 3, 2025.

**42**. After being denied relief, I appealed my case to the Board of Immigration Appeals ("BIA") on approximately November 3, 2025; and my case is now pending thereat. (See *Grant v. Zemski*, 1999 U.S. Dist. LEXIS 9271)("An appeal to the BIA can take anywhere from three to six months;" however, the current backlog of immigration cases had effected a deviation that would undoubtedly aggravate the backlog)(emphasis added). (See, e.g., *Matter of J-H-M-H-*, 29 I&N Dec. 278 (BIA 2025)(7 months); (*Matter of H-A-A-V-*, 29 I. & N. Dec. 233, 2025 BIA LEXIS 43) ( approx. 4 months); (*Matter of G-C-I-*, 29 I. & N. Dec. 176, 2025 BIA LEXIS 37) (approx. 8 months); (*Matter of J-A-N-M-*, 29 I&N Dec. 287 (BIA 2025) (approx. 10 months) and (*Matter of A-A-F-V-*, 29 I. & N. Dec. 118, 2025 BIA LEXIS 25)(approx. 6 months)(collecting cases indiscriminately). Similarly crucial, this Court may take into consideration, the recent government shutdown and the impact that it may have had on the EOIR and the BIA; especially in the sense where funding is concern, and how that may further affect the relevant employees' jobs (furloughing) as well as the necessary resources needed to execute their respective duties. (See, e.g. Exhibit B – U.S. Department of Justice FY 2026 Contingency Plan) ("EOIR's primary mission is to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws. EOIR currently has a backlog

approaching four million cases which would be greatly exacerbated during a shutdown absent

excepted activities." *Id* at p. 9. The BIA itself is not backlog-free, and is also exacerbated by the

by the government shutdown.

**43**. Factor two weighs in my favor as I have made use of the "statutorily permitted appeals

process". *Id*.

**44**. Factor three weighs in my favor since I have asserted the following defense to my

removal: Convention Against Torture ("CAT").

**45**. Factor four does weigh in my favor because the length of my immigration detention,

which is over six months, does not exceed 71 months, the amount of time I spent in incarcerated

for the conviction that made me removable.

**46**. Factor five weighs in my favor because my detention at the BFDF is not meaningfully

different from detention at a penal institution because it comprises many of the same restrictions

that often accompany penal detention, including restrictions on movement and expectations to

follow orders of presiding facility officers. In fact, the conditions of the Petitioner's current

detention are more punitive than his incarceration in state prison. Though incarceration is a form

of punishment, the Petitioner enjoyed significant privileges within that system that are now

denied to him. For example, for 64 of the 71 months[1] he served in a medium-security facility,

Mid-State Correctional Facility ("MSCF"), he relished 16.25 hours of recreation daily compared

to his current confinement that contrastingly subjects him to a 17.25 hours per day lock down;

almost the opposite of what MSCF offers, limiting his recreation to only 6.75 hours. As another

example, while Petitioner was at MSCF he always enjoyed contact visit with his family, the very

---

[1]  The remaining seven (7) months were between pretrial detention (~5 months), which was still better than BFDF,
and  a state correctional reception facility confinement (~2 months)

people who give his life meaning; and he and his family now have to endure the psychological

pain of being almost twice as far from home, and the reality of non-contact visit at BFDF. See

more examples attached hereto as Exhibit C – Comparisons of BFDF/MSCF. In all, the more

restrictive nature of his current confinement constitutes a greater hardship than the penal sentence

which was designed to punish him. See *Ranchinskiy*, 422 F. Supp. 3d at 799 (finding, absent

rebuttal from the government, that detention at the BFDF is akin to criminal incarceration);

*Gonzales Garcia v. Barr*, No. 6:19-CV-6327-EAW, 2020 WL 525377, at *15 (W.D.N.Y. Feb. 3,

2020) enforcement denied on other grounds sub nom. *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d

329 (W.D.N.Y. 2021) ("[T]he reality is that the [BFDF] houses [noncitizens] against their will

with various restrictions on their freedom of movement").

47. Factor seven weighs in my favor because my case is ongoing.

48. Since a majority of the factors in the multi-factor test weigh in my favor, particularly

factor one pertaining to the excessive length of my detention, there is sufficient evidence to

conclude that my detention is unreasonably prolonged.

49. Once the Court has found that detention is unreasonably prolonged, it moves to the

second step of the two-step inquiry, which asks what specific due process rights should be

afforded. *Hechavarria*, 2018 WL 5776421 at *7-9.

**Because My Detention Has Been Unreasonably Prolonged and I Am Being Deprived of a Liberty Interest, Due Process Demands My Release or, at Minimum, That I Receive a Constitutionally Adequate Bond Hearing**

50. Due process demands "adequate procedural protections" to ensure that the government's

asserted justification for physical confinement "outweighs the 'individual's constitutionally

protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Kansas v.*

*Hendricks*, 521 U.S. 346, 356 (1997)). ("[T]he Due Process clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 123 L. Ed. 2d 1 (1993). "Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." *J.U.*, 2025 U.S. Dist. LEXIS 191630, 2025 WL 2772765, at *9 (quoting *Valdez*, 2025 U.S. Dist. LEXIS 117131, 2025 WL 1707737, at *2 (S.D.N.Y. June 18, 2025) (collecting cases)).

51. In *Mathews v. Eldridge*, the Supreme Court provided a three-factor test to weigh the constitutionality of administrative procedures: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Each of the *Mathews* factors weighs heavily in favor of Petitioner's release, as his detention under 8 U.S.C. § 1226(c) has become prolonged.

52. First, the importance and fundamental nature of an individual's liberty interest is well established. See *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment . . . lies at the heart of [] liberty . . . ."); cf. *Hechavarria*, 2018 WL 5776421 at *8 ("[T]his Court finds little difference between Hechavarria's detention and other instances where the government seeks the civil detention of an individual to effectuate a regulatory purpose.").

53. Here, the fundamental nature of freedom weighs in favor of my release. I completed my criminal sentence on April 9, 2025, and I have been detained by Respondents for over six months without any meaningful judicial review.

**54**. Second, the risk that my freedom will be deleteriously and erroneously deprived is significant. Crucially, I have no opportunity to challenge my detention because the statute mandates detention regardless of whether I am a flight risk or danger to the community. See *Jennings*, 138 S. Ct. at 844 (discussing the use of "may [detain]" and "shall [detain]" in the context of 8 U.S.C. § 1226 and the requirement of detention when the statute uses "shall.").

**55**. Furthermore, any internal process at DHS to determine whether release is warranted is not subject to review or challenge. Thus, there is a significant risk of erroneous, unwarranted detention, and the deprivation of my liberty interests. See e.g., *Hechavarria*, 2018 WL 5776421, at *8 ("[G]iven that the statute precludes any pre- or post-deprivation procedure to challenge the government's assumption that an immigrant is a danger to the community or a flight risk, it presents a significant risk of erroneously depriving [Petitioner] of life and liberty interests."); see also *Chi Thon Ngo*, 192 F.3d 390, 398-99 (3d Cir. 1999) ("To presume dangerousness to the community and risk of flight based solely on his past record does not satisfy due process. . . . [P]resenting danger to the community at one point by committing crime does not place [a petitioner] forever beyond redemption."). See also *United States v. Friedman* " where the Second Circuit had observed that they "have required more than evidence of the commission of a serious crime... to support a finding of risk of flight." 837 F.2d 48, 50 (2d Cir. 1988) (per curiam) (emphasis added). Moreover, the very same statute(s) used to effect my removability does not explicitly or indirectly make any reference(s) to one dangerousness. (See 8 USCS § 1227) (Deportable Aliens); and (8 USCS § 1226) (Detention of Criminal Aliens).

**56**. Finally, the procedure I propose—namely, requiring that the DHS prove to this Court and, subsequently, an immigration judge, that my continued detention is justified—does not

Page 13

meaningfully prejudice the government's interest in detaining dangerous noncitizens during removal proceedings. Instead, it serves just that purpose. See e.g., *Hechavarria*, 2018 WL 5776421 at *8 ("The government . . . contends that it has a regulatory interest in [petitioner's] detention pending removal based on his serious criminal history and risk of flight. This Court agrees that both of these interests may well be 'legitimate and compelling.' But those are the very interests that would be addressed at a detention hearing. So the government's continued assertion that [the petitioner] must be detained because he is dangerous simply begs the question and suggests exactly why a hearing is necessary.") (internal citations omitted).

57. Respectively, as an essential point, the DHS nor the Department of Justice ("DOJ") does not make any effort to ensure that criminal U.S. citizens that commit serious crimes, such as Rape, Murder, Drug Trafficking or Kidnapping, *inter alia*, which are crimes worst than what Petitioner was accused and convicted of, be kept in confinement; instead, upon the expiration of their court-imposed sentences, they are release back in the community, even when they are, or could be considered to be "dangerous" and/or known to have a "serious criminal history;" all when the central contention is that the safety of the community outweighs one's due process rights and liberty interests.[2]

58. To illustrate, in reality, if Man A, a criminal alien, and Man B, a criminal U.S. citizen, were respectively convicted of Assault in the First Degree in violation of New York Penal Law § 120.10, and both get sentenced to five years of imprisonment, upon the expiration of their court-

---

[2] Petitioner is not comparing himself with a U.S. citizen through the lens of any immigration statue or regulation, or from an immigration point of view, but rather through the lens of syllogism and logical reasoning; particularly with regards to the "dangerousness" of an individual; and the deplorable assessment employed by those who give it an equivocal meaning; further inviting those who are suppose to remain impartial, and ensure due process rights are honored, to maintain the bias and discriminatory practices.

imposed sentences, Man B would be released, maybe on a period of supervised released or parole, without any ascertainment on whether he is a danger to the community, or without any assessment on his future dangerousness; while on the other hand, following Man A's detention by DHS, he would be detained under 1226(c), as a dangerous person, and be held without a bond hearing. And in the event a bond hearing is ordered by a federal court, the government would further contend that he is a danger to society. When, in all, on the one hand, the DOJ states that its mission "is to uphold the rule of law, to keep our country safe, and to protect civil rights;" and on the other hand, DHS states that its vital mission is "to secure the nation from the many threats we [United States] face... and our goal is clear - keeping America safe." (emphasis added). See the "About" pages of DOJ and DHS on their respective website available at https://www.justice.gov/about; and https://www.dhs.gov/about-dhs. (See DHS' Core Values available at https://www.dhs.gov/core-values) ("With honor and integrity, we will safeguard the American people, our homeland, and our values." Candidly, what is implied here is that, regardless of what is construed or interpreted, despite the crime that the U.S. citizen commits, he/she is considered, or has the privilege of being considered not or less dangerous than an immigrant, especially one detained under § 1226(c); like Petitioner.

**59**. As the Second Circuit articulated in *Velasco Lopez v. Decker*, once detention has become prolonged, it is in everyone's—the petitioner, the Government, and the public's—interest for the petitioner to receive a constitutionally adequate custody redetermination hearing. See 978 F.3d 842, 857 (2d Cir. 2020) ("The irony in this case is that, in the end, all interested parties prevailed. The Government has prevailed because it has no interest in the continued incarceration of an individual who it cannot show to be either a flight risk or a danger to his community. [The

Page 15

petitioner] has prevailed because he is no longer incarcerated. And the public's interest in seeing

that individuals who need not be jailed are not incarcerated has been vindicated.").

**60**. In the immigration context, the only two valid justifications for detention are to mitigate

the risks of danger to the community and to prevent flight. See *Demore*, 538 U.S. at 531

(Kennedy, J., concurring) ("[T]he justification for 8 U.S.C. § 1226(c) is based upon the

government's concerns over the risk of flight and danger to the community").

**61**. Given the gravity of the liberty deprivation when the government detains individuals, due

process requires that the government bear the burden of proof by clear and convincing evidence

for detaining an individual, particularly after that detention has become prolonged. *Cf. Velasco*

*Lopez v. Decker*, 978 F.3d 842, 856 (2d Cir. 2020). (stating, for an 8 U.S.C. § 1226(a) prolonged

detention claim, "it is in improper to allocate the risk of error evenly between the individual and

the Government when the potential injury is as significant as the individual's liberty.

Accordingly, we conclude that a clear and convincing evidence standard of proof provides the

appropriate level of procedural protection.").

**62**. Consistent with these principles, the WDNY has found that, where a particular detained

person's mandatory detention becomes unreasonably prolonged, due process requires the

government to show, by clear and convincing evidence, that continued detention is necessary

because that detained person is a flight risk or is dangerous. *Jules v. Garland*, No. 21-CV-6342

CJS, 2021 WL 4973081, at \*7 (W.D.N.Y. Oct. 26, 2021); see also *Campbell v. Barr*, 387 F.

Supp. 3d 286, 300 (W.D.N.Y. 2019) ("To sustain the prolonged detention of [a noncitizen]

subject to removal proceedings based on its general interests in immigration detention, the

government is required, in a full-blown adversary hearing, to convince a neutral decisionmaker

Page 16

by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person, or ensure that the [noncitizen] will appear for any future proceeding. This requires consideration of less restrictive alternatives to detention.") (internal citations and quotation marks omitted); *Ranchinskiy*, 422 F. Supp. 3d at 800 ("[B]oth due process and BIA precedent require the IJ to consider ability to pay and alternative conditions of release in setting bond.").

### Petitioner is Neither a Danger to the Community or a Flight Risk

**63**. While the Petitioner acknowledged his prior conviction, the circumstances of his case demonstrate that he is not a threat to the community. Similarly vital, an immigration judge's independent analysis of a conviction's impact should focus on individualized evidence of the Petitioner's rehabilitation, which available, even by the State of New York, to further determine whether or not Petitioner is a danger to society, or a flight risk.

**64**. Flight risk is not explicitly defined under the Immigration and Nationality Act, however, Petitioner ask that the following holding in *United States v. Watkins*, to be considered as the concern that the DHS has regarding risk of flight, as it is applicable to Petitioner's case. A "serious risk of flight" means "a great risk—beyond average—that the [one] will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." 940 F.3d 152, 158 (2d Cir. 2019)(emphasis added). In response thereof, Petitioner has strong family ties here the United States, which can be confirmed by the DHS. Second, despite the seriousness of the crime of which Petitioner was accused of, and subsequently convicted, he (1) had paid his debt owed to society and the victim; and (2) the convicting court is cognizance of

his diligence in causing the police to be contacted; and upon their arrival, he further caused them access to the boundaries in which he was occupying as well as his person; which all contrasts him evading justice. Besides, thereupon the police's arrival, the two detectives had no weapon drawn, and even had Petitioner traversed the boundaries of his home, out of their sight, undermining the possibilities of what could happen in such scenario, and the fact that an egress remain unsecured; but instead, upon a forceful presumption, just by having the police contacted, manifested Petitioner's clear respect for the laws of the State of New York and the United States. After allowing Petitioner to take a shower and get dress, arrest was within half-hour of their arrival, without any disturbance therefrom. Also held in the Second Circuit, "we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988) (per curiam).

65. Crucially, this Court as well as the immigration court, should consider that Petitioner have not engaged in any criminal or other restricted conduct between the time of arrest and completion of imprisonment, which was for almost six (6) years. In fact, the Petitioner was granted six months off his earliest release date due to his exceptional institution record; which includes, zero disciplinary infractions against him. See Exhibit D – Prison Disciplinary Record. Additionally, his release was granted by the New York State Board of Parole after a thorough and comprehensive review of the Petitioner's record, and a determination that his release would not be detrimental to the safety of the community and that he no longer have any criminogenic needs therein. See Exhibit E – Prison Rehabilitation Record. Equally important, Petitioner have not engaged in any criminal or other restricted conduct at BFDF, and the perpetuation of such morality will continue onwards. Undisputedly, the Petitioner has successfully completed his

sentence and shown evident and demonstrable signs of good moral character from then through now. That being so, to make an adverse finding solely on the historical fact of the conviction, without due consideration for the Petitioner's post-conviction conduct and the particular equities of his case, would be an inequitable and incomplete assessment.

66. Respectively, yet compelling, this Court may consider this paragraph, which Petitioner summarized from both a collective of testimonies from other detainees detained under 1226(c), who have had a bond hearing at BFDF[3], and upon information and belief. In summary, the generality of immigration judges fail to apply the correct legal standard in bond hearings, in violation of District Court orders. In particular, rather than requiring the government to prove by clear and convincing evidence that a detainee is a danger to the community or a flight risk, the judges knowingly and calculatedly shift the burden to the detainee. Unquestionably, this practice constitutes a material error of law and a denial of due process. For these reasons, Petitioner will request, *infra*, that this Court order that stenographic notes and/or audio recording(s) be documented in the event there is a bond hearing.

## Petitioner's Social Circumstances Should Be Considered

67. Undeniably, Petitioner had his criminogenic needs addressed and there were no further determination that indicated that he was further in need of such needs; and should he be release, he will have a permanent home address to reside, will not become a public charge and will pursue employment with his above average credentials. (See *Belevich v. Thomas*, 17 F.4th 1048 (11th Cir. Ala. November 1, 2021))(An immigrant is unlikely to become a public charge if he

---

[3]    Whether electronically or in-person.

maintains stable employment...becomes supported by someone else.) (emphasis added).  Also of great significance, is (1) Petitioner does not use alcohol nor drugs, hence the probability of him becoming an addict is extremely low; and (2) Petitioner has very strong family ties, and has over thirty (35) family members[4] here in the United States.

## CLAIMS FOR RELIEF

### COUNT ONE:

### MY ONGOING DETENTION CLEARLY VIOLATES THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT

**68**. I reallege and incorporate by reference each and every allegation set forth in the preceding paragraphs.

**69**. Detained people who have been mandatorily detained in immigration detention for an unreasonably prolonged period must be released absent clear and convincing evidence that the detained person is actually dangerous or a flight risk, and that no condition or combination of conditions of release can reasonably mitigate that danger or flight risk.

**70**. For these reasons, my continued detention without violates due process.

### COUNT TWO:

### THE COST OF PETITIONER'S DETENTION COULD BE DIVERTED TO OTHER GOVERNMENTAL AVENUES TO ASSIST U.S. CITIZENS IN DIRE NEED

**71**. ICE has what is called an Alternatives to Detention (ATD) program which exists to ensure compliance with release conditions and provides important case management services for

---

[4]    These family members are either U.S. Citizens or Permanent Residents.

non-detained aliens. This program consists of the Intensive Supervision Appearance Program (ISAP), and both utilizes case management and technology tools to support aliens' compliance with release conditions while on ICE's non-detained docket. As noticed, and make known by ICE, both programs also increases court appearance rates. At the same time, the daily cost per ATD-ISAP participant is less than $4.20 per day — a stark contrast from the cost of detention, which is around $152 per day. Equally important, ATD-ISAP enables aliens to remain in their communities — contributing to their families and community organizations and, as appropriate, concluding their affairs in the U.S. — as they move through immigration proceedings or prepare for departure. In fact, these programs have been in place since 2004 and the number of participants has increased over time. Through the end of October 2024, approximately 7.6 million aliens were being overseen on ICE's non-detained docket. Of those, more than 179,000 participated in the ATD-ISAP program. See ICE's "Alternatives to Detention" available at https://www.ice.gov/features/atd#content1.

**72**. In complement, in the event that this Court order Petitioner release from further detention, on his own initiative, he will cause his supervision, that is, any condition or combination of conditions set forth by ICE, to be non-conflictingly enhanced with the New York State Department of Corrections and Community Supervision's own restrictions and conditions that were determined prior to his release, and his currently possessed by him and his assigned Parole Officer, Ms. Issacs[5].

---

[5]    Contact information can be provide at the Court's request.

## COUNT THREE:

**PETITIONER'S DETENTION WILL LIKELY CONTINUE WELL INTO THE FORESEEABLE FUTURE**

**73**. Here, Petitioner has done nothing more than pursue relief from removal in a good-faith manner. There is no evidence that the Respondents can provide that would assert that he had filed multiple continuances to delay his removal proceedings or that he had or have been exhibited(ing) dilatory conduct. Rather, he had litigated his application for deferral of removal under the CAT, and have made use of a statutory appeal to the BIA. (See *Gabriel v. Barr*, 2021 US Dist LEXIS 14997 [MD Pa Jan. 27, 2021) ("[W]e do not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings," and that "counting this extra time as reasonable ... would effectively punish [an alien] for pursuing applicable legal remedies.") (*Santos v Warden Pike County Corr. Facility*, 965 F3d 203 [3d Cir 2020]) (quoting *Chavez-Alvarez v Warden York County Prison*, 783 F3d 469 [3d Cir 2015]). Undeniably, Petitioner is not "gaming the system," *Chavez-Alvarez*, 783 F.3d at 476, and neither party appears to be acting in bad faith.

**74**. My appeal has been taken as of November 3, 2025. and is now pending before the BIA. At the same time, if I were to receive an unfavorable decision from the BIA, I may be required to return before the Immigration Judge for further proceedings or appeal an adverse decision to the United States Court of Appeals for the Second Circuit. See 8 U.S.C. § 1252(a)(5). A petition for review in Court of Appeals for Second Circuit can take a time way beyond that of the BIA itself; *supra*. (See e.g., *Esteban v. Bondi*, 2025 U.S. App. LEXIS 18244 (2d Cir. July 23, 2025) (approx. 19 months); (*Guzman Mejia v. Garland*, 2024 U.S. App. LEXIS 17217 (2d Cir. July 15,

2024)(approx. 28 months); and (*Lopez v. Bondi*, 2025 U.S. App. LEXIS 21103 (2d Cir. August 19, 2025) (approx. 36 months) (collecting cases indiscriminately). Furthermore, I would certainly not be eligible for any habeas relief unless a decision is reach therein, provided that ICE does not remove me in the statutory period, if a stay is not issued by the court. In all, when "the alien's removal proceedings are unlikely to end soon, this suggests that continued detention... is unreasonable." *Id.*

**75**. Petitioner will not be released by Respondents unless ordered by this Court; which has such authority. Therefore, it is respectfully being requested herein that this Court not become irresolute in exercising such authority.

## CONCLUSION

**76**. In all, should this Honorable Court deny habeas relief to Petitioner, it would actively compound his suffering, and reinforce the legal consequences that have already unreasonably and unlawfully deprived him of his liberty as an individual as well as constitutionally. In addition, it would transform the Court from a protector of constitutional rights into an instrument that perpetuates harm.

## PRAYER FOR RELIEF

**WHEREFORE**, I respectfully pray that this Honorable Court:

**1**. Assume jurisdiction over this matter;

**2**. Grant a Writ of Habeas Corpus directing the Respondents to release me from further unlawful detention and order Petitioner's release on conditions to be determined by the Respondents;

**3**. Grant a Writ of Habeas Corpus directing the Respondents to release me from further unlawful detention and order Petitioner's release on conditions, to be determined by this Court, that will complement the Respondent's own conditions. Any condition(s) set by this Court would cause Petitioner to have a legal responsibility to comply therewith, or otherwise be subjected to either severe civil or criminal penalty(ies).

**4**. Enter preliminary and permanent injunctive relief enjoining Respondents from unlawfully detaining me any further;

**5**. If this Court decides not to issue a Writ of Habeas Corpus directing my release, it should instead, issue a conditional Writ of Habeas Corpus requiring Respondents to provide him with an individualized bond hearing within seven calendar days of the date of the any corresponding, Order made by this Court, before an impartial decision-maker, at which Respondents must exclusively bear the burden of establishing by clear and convincing evidence that my detention should be perpetuated as well as the violation of my due process rights under the Fifth Amendment; because the safety of the community actually outweighs my due process liberty interest thereunder, as an immigrant;

**6**. Order that in considering my detention, the Court should require Respondents to meaningfully consider alternatives to detention and my ability to pay when setting a monetary bond;

**7**. Order the Respondents not to remove, transfer or otherwise facilitate the removal of Petitioner from the Western District of New York during the pendency of this petition.

**8**. Order that, in the event a bond hearing is held, a record of such hearing be taken in the form of a transcript (stenographic minutes) and/or audio recording, to later be provided to this Court

Page 24

for the ascertainment of fairness, bias and/or prejudice.

**9**. Order that, in the event a bond hearing is held, the government shall report the outcome of to this Court, within a reasonable time set forth by this court.

**10**. Order that, in the event the Respondents fail to provide Petitioner with a bond hearing consistent with any time limit ordered by this Court, the Respondents immediately release him.

**11**. Grant such further relief as the Court deems just and proper.

I affirm, under penalty of perjury, that I am the Petitioner, I have read this petition, and the information in this petition is true and correct.

DATED: _November 12, 2025_
        Batavia, New York

                                         Respectfully submitted,

                                         Najay Cummings, *pro se*
                                          A#:066-428-206

Sworn to before me this:
                                  Buffalo Federal Detention Facility
                                          4250 Federal Drive
                                          Batavia, New York 14020

_1 2_ day of _Nov_ , 20_25_

NOTARY PUBLIC

Aaron A. Stahl
Notary Public, State of New York
Reg. No. 01ST0013537
Qualified in Orleans County
Commission Expires September 14, 2027

## Exhibit Guide

| EXHIBIT | DOCUMENT |
|---------|----------|
| A | Letter Requesting Relief |
| B | U.S. Department of Justice FY 2026 Contingency Plan |
| C | Comparisons of BFDF/MSCF |
| D | Prison Disciplinary Record |
| E | Prison Rehabilitation Record |

Exhibit A

Najay Cummings
A#: 066-428-8206
Buffalo Federal Det. Fac.
4250 Federal Drive
Batavia, NY 14020

Date: October 27, 2025

Immigration and Customs Enforcement
Attn: Assistant Chief Counsel
4250 Federal Drive
Batavia, NY 14020

Dear Assistant Chief Counsel:

     Faced with the daily specter of my prolonged detention, and it being continued well into the foreseeable future, I find myself in a constant state of turmoil, a reality far more crushing than serving my time in prison. It is extremely troubling to the mind, not for me alone, but for my entire family[1], who have been bearing the brunt of my separation from them. The profound grief and remorse that consume my days and haunt my nights are a heavy price to pay, but the looming prospect of being further detained under these more restrict restraint is a more is an even more unbearable burden. My family and I cherish the closeness and togetherness we have cultivated, a bond forged through years of struggle and resilience in Jamaica. The thought of that being continuously detained by forces beyond my control, is a torment.

     My family's story is not a simple one. My family who made it to the United States of America from Jamaica sought a better life, and though they have found it here in the United States, they have not escaped the pain of those left behind. The anguish of those who never made it, who struggled and died destitute, remains a constant sorrow that reminds me of the importance of family; and what deportation would subject me to. Prior to coming to the United States, my dream was to fight for this country; and upon my arrival here, I was greeted with a sense of freedom, one that encouraged me even more to sign up for the military (US Navy), which I walked over five (5) miles to do. Unfortunately, I missed three (3) calls due to incarceration, and the thoughts were truly depressing, and still are.

     At the same time, it must be known that I never intended to come to this country to commit a crime. Thus, my immorality against my own compatriot should not have happen; as it was never a thought, nor even a fleeting one. But I made a bad decision, while under the influence of sudden passion, and for that, I take full responsibility; and further express my most profound and sincerest remorse therefor. Crucially, I earned my prison sentence, and I do not resent it. It was during that time that I began to grapple with my shortcomings, to understand my errors, and to confront the flaws in my character. In that crucible, I was not merely punished; I was transformed. I emerged from prison a changed man, no longer governed by anger but guided by compassion, ready to be a productive member of society. Now, as I stand on the precipice of

---

[1] Over thirty-five (35) family members that or either U.S. Citizens or Permanent Residents.

Page 1

prolonged detention, I am faced with a devastating consequence that threatens to my liberty and life. It is my deepest and most sincere hope that I may be given the chance to prove my reformation, to reunite with my family until deportation, and to contribute to the society should you order me release, and/or effectuate an alternative to my detention.

In the mirror of my past, I see a man consumed by self-sabotage, an unseen enemy that ultimately led to my incarceration. The weight of that reality is nothing compared to the crushing burden of the pain and exceptional hardship I inflicted upon my family in the United States, especially my mother. Incarceration forced a moment of reckoning upon me. Threat, I was confronted with a profound choice: invest my diligence in unearthing the roots of my vulnerabilities and shortcomings, or succumb to the inertia of my surroundings. My intense desire for true change—a change that would benefit not only myself but also those who had been hurt by my actions—propelled me forward.[2]

Absent immigration consequences, upon my release from prison, I would have undoubtedly emerge onto a different path, one distinct from the destructive road I had traveled before. This transformation would have been the direct result of a solemn promise I made to myself and family: to become a person defined by positive actions, integrity, and mindfulness. Today, I stand as living proof of that change. I successfully completed anger management classes and, and I am no longer defined by the aggression that once held me captive. I am a compassionate and anger-free man, committed to being a productive member of society; which include but not limited to, making a yearly minimum donation of five-thousand dollars to any organization that charges itself with making a difference in the lives of the people of this land, specifically, an organization that supports Child Abuse or Domestic Violence Survivors;[3] becoming a living kidney donor, which I perceive has repaying society for my wrong that I so regret.

Comes now, I understand that the past cannot be erased. But I have used my time to not only recognize my mistakes but to grow and change for the better. I am no longer a threat to myself, let alone society at large. I am a testament to the fact that even in the deepest despair, change is possible. I yearn for the opportunity to demonstrate this not from a distance, but as a valued and contributing member of my family and community. Counsel, at minimum, I respectfully requests that I be release with or without bond until a final outcome in my removal proceedings is enclosed; that of which I would comply despite the disposition. Supporting documents are enclosed.

I affirm, under penalty of perjury, that I, Najay Cummings, have read this document, and the information in this petition is true and correct.


Sworn to before me this:                                      Respectfully submitted,

21 day of Oct. , 2025

NOTARY PUBLIC                                        Najay Cummings, *pro se*

KAYCEE ERNST
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Genesee County
01EV6413806

---

[2]  I obtained an associate's degree, and nationally accredited paralegal certification.

[3]  I was abused as a child both physically and sexually.

# Exhibit B

# U.S. Department of Justice FY 2026 Contingency Plan

- September 29, 2025 -

This FY 2026 Contingency Plan covers Department of Justice (DOJ or the Department) operations during a lapse in appropriations.

The Antideficiency Act restricts the Federal Government's ability to obligate funds in advance of appropriations or beyond appropriated levels. During a lapse in appropriations, the Department will only continue the following categories of activities:

1. Those funded by a source that has not lapsed, such as permanent indefinite appropriations and carryover of no-year funds appropriated in a prior year;

2. Those for which there is an express authority to continue during an appropriations lapse;

3. Those for which authority to continue during an appropriations lapse arises by necessary implication;

4. Those related to the discharge of the President's constitutional duties and powers; and

5. Those related to "emergencies involving the safety of human life or the protection of property," *i.e.,* where there is a reasonable likelihood that the safety of human life or the protection of property would be compromised, in some significant degree, by delay in the performance of the function in question.

The Department of Justice is comprised of components that have a broad array of national security, law enforcement, and criminal justice system responsibilities. The Department's mission is to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

Therefore, a significant portion of the Department's mission relates to the safety of human life and the protection of property, and primarily for this reason, the Department has a high percentage of activities and employees that are excepted from the Antideficiency Act restrictions and can continue during a lapse in appropriations. Other activities and employees are excepted because they are funded with multi-year or no-year appropriations, or because they are Presidential appointees, most of whom are excepted from furlough because they are not covered by the leave system in 5 U.S.C. Chapter 63.[1] Note that the contingency plan assumes that, at the

---

[1] Note: Former career Senior Executive Service (SES) appointees who receive a Presidential appointment that would

time of a shutdown, all Components and Subcomponents normally headed by a Presidential appointee are in fact headed by a Presidential Appointee.   If at the time of shutdown, the Department does not have Presidential appointees in one or more of those positions, the Department will determine the excepted status of those who are acting in those positions in accordance with the criteria above.

## Agency Summary

The total number of agency employees on board at the time the Department initially issued this Contingency Plan was 115,131[2] (see Table 2).  Based on onboard personnel data as of May 31, 2025, for a lapse in appropriations for the first five calendar days of FY 2026, beginning on October 1, 2025, 102,291 DOJ employees would be excepted from furlough (see Table 1), representing 89% of DOJ on-board employees.

**Table 1: Department of Justice FY 2026 Contingency Plan Exceptions
Employees Excepted from Furlough**

| Categories | | Total Excepted Employees |
|---|---|---|
| Category 1 | Employees whose compensation is financed by a resource other than annual appropriation (also referred to as "exempt employees") | 4,930 |
| Category 2 | Employees necessary to perform activities expressly authorized by law to continue during a lapse in appropriations | 1,408 |
| Category 3 | Employees necessary to perform activities necessarily implied by law | 3,190 |
| Category 4 | Employees necessary to the discharge of the President's constitutional duties and powers | 30 |
| Category 5 | Employees necessary to protect life and property | 92,733 |
| **Total** | | **102,291** |

---

normally convey an exemption from the leave system may be eligible to elect to retain SES leave benefits under 5 U.S.C. § 3392(c).  If SES leave benefits are so elected, such a Presidential Appointee would be subject to furlough under 5 CFR part 359, subpart H, unless otherwise excepted.

[2] With limited exceptions, onboard staffing data are derived from DOJ's payroll system and reflect information from pay period 10, 2025.

The Department's plan is consistent with Office of Legal Counsel (OLC) opinions and Office of Management and Budget (OMB) guidance and conforms to the following general principles:

- The law enforcement capacity of the U.S. Government should not be impaired or perceived to be impaired. To do so could constitute an imminent threat to the safety of human life and the protection of property.

- Components may call some employees back to work if the need for their services becomes critical, and furlough others as conditions change.

- Ancillary support services will be maintained to the extent necessary to support excepted operations. These ancillary functions include legislative affairs and other congressional support activities, public affairs activities, and community outreach, which may be conducted to the extent the failure to perform those functions prevents or significantly damages the functioning of a funded component, the operations of other funded parts of the Government, or the performance of an excepted function.

- Employees may not be reassigned or given new duties, and offices may not be restructured, in order to move individuals from a non-excepted function into an excepted function (although some rotational coverage of excepted positions will occur).

With respect to litigation, the Department's plan assumes that the Judicial Branch will continue to operate, though possibly at a reduced level, through the lapse. Therefore:

- Criminal litigation will continue without interruption as an activity essential to the safety of human life and the protection of property. Domestic and international extraditions are also necessary to protect life and property and therefore excepted. Extradition requests are made pursuant to bilateral and multilateral treaties which carry obligations to extradite within a treaty deadline timeframe that cannot be extended due to a lapse in appropriation.

- Civil litigation will be curtailed or postponed to the extent that this can be done without compromising to a significant degree the safety of human life or the protection of property. Litigators will approach the courts and request that active cases, except for those in which a delay would compromise to a significant degree the safety of human life or the protection of property, be postponed until funding is available. If a court denies such a request and orders a case to continue, the Government will comply with the court's order, which would constitute express legal authorization for the activity to continue. The Department will limit its civil litigation staffing to the minimum level needed to comply with the court's order and to protect life and property. Receipt of summonses, pleadings and motions by mail may be delayed.

Assumptions relating to training activities (where the funding for those training activities has lapsed) are as follows:

- To ensure the proper execution of the Department's emergency functions, components may determine that the training of new employees in positions that have been designated as "emergency" is an excepted function.

- To the extent that the training of new "emergency" employees is in process or about to begin when a lapse occurs, components should consider whether a short delay (for example, over the weekend) in the training will compromise emergency functions. If such a delay will not compromise emergency functions, components should consider keeping the employees at the training center but delaying the training itself or not sending the employees to the training during the brief delay. If at any point the component determines that the delay in training might impact emergency functions, the training should resume.

- New employees who are not in positions designated as "emergency" should not start work during the lapse and should not be trained.

- In-service training of current employees, even those excepted from furlough, will be cancelled.

- Generally, training of state and local officers should be cancelled during a lapse of appropriations. However, components should use their judgment to determine whether, in exceptional circumstances, there is a reasonable and articulable connection between the training and the safety of human life or the protection of property, and there is a reasonable likelihood that the safety of human life or the protection of property would be significantly compromised if the training were delayed. If so, such training may continue.

- Generally, training for international law enforcement officers occurring in the United States will be cancelled. However, with respect to training international law enforcement officers abroad (such as the training of officers who will be working in a combat zone), components will use their judgment to determine whether such training needs to occur immediately to protect human life or property. If so, such training may continue.

- For those components who use the Federal Law Enforcement Training Center (FLETC) for training, shutdown and reengagement plans will be coordinated with the Department of Homeland Security and FLETC personnel.

Employee relocations will, for the most part, be postponed during a lapse. Exceptions will be made for employees performing emergency functions who were in the process of moving and/or

4

had their relocation authorizations approved prior to the lapse, but reimbursements for their expenses may be delayed. New relocations will not be approved unless: (a) they are being paid from a funded source (e.g., Diversion fees or Federal Bureau of Investigation (FBI) no-year funding) or (b) they are necessary to continue emergency functions.

With respect to overseas operations, the Department will defer to the Chief of Mission (COM) for all employees (DOJ and contract) who are posted at an embassy or installation and will ensure its employees comply fully with all applicable directives of the COM related to the continued or suspended business of the embassy or installation.

Department programs funded with permanent indefinite appropriations or other funding not subject to annual appropriation (e.g., Diversion Control, Health Care Fraud and Abuse Control, Debt Collection, Assets Forfeiture Fund, Federal Prison Industries) are displayed in the plan as excepted positions (and are also referred to as "exempted positions" in other contexts), because their funding is not dependent upon an enacted appropriation. Also included within the accounts that have funding are the Bureau of Prisons' (BOP) Buildings and Facilities and Commissary accounts, which have carryover funding from their multi-year authority. Employees paid from these funding sources are not dependent upon an enacted appropriation and are therefore considered excepted. In light of the continued availability of these funding sources, approximately 4,930 excepted employees will be paid, at least initially, in the event of a lapse. The rest of the excepted employees will work without pay.

The Department notes that certain components are in the process of being eliminated as standalone components as part of the Department's Agency Reduction In Force (RIF) and Reorganization Plan (ARRP). Employees in these components who qualify for an exception will be excepted. These component eliminations are expected to occur after October 1, 2025, and this plan is subject to updates after that time. The excepted employee charts reflect these ARRP transitions as much as possible, but are based on the Department's current, not future, state.

## Individual DOJ Component Summaries

The following is a synopsis of the DOJ components' plans, including the nature of the agency activities in which excepted employees will be engaged. The attached Table 2 provides the total number of employees in the component on-board when the plan was issued; the total number of component employees excepted from furlough under each of the recognized exceptions; and the agency's legal basis for each of its determinations to except employees.

**Department Leadership Offices**: These offices are funded through the Justice Operations, Management, and Accountability (JOMA) account and include Presidential Appointees, who are not subject to furlough by virtue of their appointment status, while a sizeable number of employees in these organizations will be furloughed. The excepted employees will provide overall Departmental leadership and policy management for ongoing operations that protect life

5

and property and for other excepted activities during the lapse of appropriations.

**Justice Management Division:** The JOMA account also funds a portion of the functions and staff of the Justice Management Division (JMD). Excepted JOMA-funded JMD employees will support ongoing operations that protect life and property, including IT support and building security at the Main Justice Building. The Working Capital Fund (WCF) is funded by reimbursements from a variety of sources, but primarily from sources that are appropriated annually and will not be available if there is a lapse in appropriations; many of these functions will be curtailed during the lapse. In addition, a number of JMD employees are funded by the Three Percent Fund for debt collection, which is not subject to annual appropriation, and thus these employees are excepted under Category 1 and therefore continue to work during a lapse in appropriations.

JMD also oversees the Justice Information Sharing Technology (JIST) and the WCF Information Technology accounts. Excepted employees in these areas are needed to operate the 24/7 Justice Security Operations Center, which provides information security for the Department's systems, including those required for exempted and excepted functions. In addition, these employees are needed for information technology operations and systems that support ongoing law enforcement operations that will continue during any lapse in appropriations.

**Executive Office for Immigration Review (EOIR):** A national emergency was declared by President Trump citing the threat to the national security and economy of the United States caused by illegal migration. EOIR's primary mission is to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws. EOIR currently has a backlog approaching four million cases which would be greatly exacerbated during a shutdown absent excepted activities. EOIR staff, including administrative oversight and support staff, that are needed to process immigration cases and appeals involving detained respondents, including criminal aliens, are excepted employees in the event of a shutdown. Non-court employees, including general counsel, policy and human relations employees, will be reduced to the minimum necessary to support excepted operations. Employees are excepted on the basis of the recognized exceptions to the Antideficiency Act, including the exception for activities necessary to protect life and property.

**General Legal Activities (GLA):** The GLA account includes the following components: Office of the Solicitor General, Criminal Division, Civil Division, Environment and Natural Resources Division, Office of Legal Counsel, and Civil Rights Division. The Solicitor General and the Assistant Attorneys General are Presidential Appointees and are not subject to furlough. Three organizations that are impacted by the Department's ARRP were also funded through GLA in FY 2025: INTERPOL Washington, the Tax Division, and the Office for Access to Justice.

The excepted employees are necessary to provide legal advice on ongoing excepted functions of

6

the Executive Branch, including matters of national security and presidential authority, to the Attorney General, the Deputy Attorney General, others within the Department, the White House, the National Security Council, and the Departments of State and War.   Excepted employees will also review Attorney General Orders, Executive Orders and Proclamations, and presidential memoranda and directives; ensure that criminal litigation continues uninterrupted; seek continuances for civil and appellate litigation, except as necessary for the immediate protection of life or property; proceed with civil and appellate litigation should attempts to secure continuances fail; provide administrative advice and resource allocation guidance to Civil Rights Prosecution personnel and the Assistant Attorney General, Civil Rights Division, in the event of civil disorder; respond to and investigate complaints of alleged criminal civil rights violations involving endangerment of life or property and handle complaints from institutionalized persons concerning life-threatening situations.  Also, excepted employees are needed to provide uninterrupted communications among federal, state, local and international law enforcement entities in furtherance of, among other things, criminal investigations and the apprehension of fugitives and criminal and illegal aliens.  If a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse.

**U.S. Marshal Service (USMS)**: As a Presidential Appointee, the Director of USMS is not subject to furlough.  The ninety-four U.S. Marshals in the Federal Districts are Presidential Appointees, but are subject to the leave system in 5 U.S.C. Chapter 63 and, therefore, are subject to furlough.  However, since they all have duties directly related to the protection of life and property, they are excepted from furlough and will continue working.  The excepted employees, including the U.S. Marshals, are needed to carry out duties associated with judicial security; prisoner custody, security, and transportation; and fugitive apprehension.  Some Headquarters personnel are also excepted as their functions are critical to the support of the U.S. Marshals and Deputy U.S. Marshals in the field – this support includes integrity assurance, oversight of investigative operations and judicial security, tactical operations, witness security, Basic Deputy U.S. Marshal training, and management functions that include law and policy, budget and finance, procurement, information technology, human resource administration, and security. In the event of an extended lapse in appropriations, the USMS would require additional excepted positions across its Divisions.

**Office of the Inspector General (OIG)**: As a Presidential Appointee, the Inspector General is not subject to furlough.  The excepted employees are needed to investigate allegations of bribery, fraud, abuse, civil rights violations and violations of other criminal laws and administrative procedures arising from the conduct of Department employees, contractors and grantees; support law enforcement functions; oversee emergency operations and provide legal advice and issue subpoenas; continue work on time-sensitive national security investigations; and provide security and administrative support for excepted personnel and emergency services.  In addition, OIG has

7

excepted personnel under Category 1 who perform audits whose compensation is financed from sources other than direct appropriations. In the event of an extended lapse in appropriations, additional personnel may be needed.

**Office of the Pardon Attorney (PARDON)**: PARDON's mission is to assist the President in the exercise of his constitutional clemency power, which falls within exception 4, enabling the "discharge of the President's constitutional duties and powers." This mission includes preparing warrants for clemency, providing recommendations to the President, undertaking investigations in pending clemency matters, and providing data and information to the President on individual clemency cases, the collective clemency caseload, and historical acts of clemency. PARDON is the sole office within the federal government that has expertise in this subject matter and is the only entity that can provide this key information to the President. Should the President wish to act on any pending clemency matter, or even to seek further information about pending or historical clemency cases, PARDON alone provides this vital service and data to the President. Without PARDON, presidential clemency decisions may be delayed for individuals who would otherwise receive clemency.

**U.S. Attorneys (USA)**: Excepted employees are needed to address ongoing criminal matters and civil matters of urgency throughout the Nation. Criminal litigation will continue without interruption as an excepted activity to maintain the safety of human life and the protection of property. Civil litigation will be curtailed or postponed to the extent this can be done without compromising to a significant degree the safety of human life or the protection of property. If a court denies a litigator's request to postpone a case and orders it to continue, the litigation will become an excepted activity that can continue during the lapse. Headquarters support is maintained only to the extent necessary to support excepted operations. The Executive Office for United States Attorneys also expects that it will need to except additional employees in the event of an extended lapse.

**Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)**: As a Presidential Appointee, the Director of ATF is not subject to furlough. Excepted employees include: all agents in ATF's field divisions, who conduct the full range of criminal investigations in the firearms, arson, explosives, alcohol, and tobacco program areas; Industry Operations Investigators who conduct compliance inspections of Federal firearms and Federal explosives licensees (including those mandated under the Safe Explosives Act), as well as application inspections; and other personnel who collect, review and analyze intelligence data in support of criminal investigations. Headquarters support will be maintained only to the extent necessary to support excepted operations.

**Drug Enforcement Administration (DEA)**: DEA's Administrator is a Presidential Appointee and not subject to furlough, and agents in DEA field organizations are excepted from furlough

because they support active counternarcotics investigations, particularly in light of recent authoritative actions – including the Department of Homeland Security Memorandum issued on January 22, 2025, expanding immigration enforcement authority – and Presidential directives, such as *Guaranteeing the States Protection Against Invasion* and *Designating Cartels and Other Organizations as Foreign Terrorist Organizations and Specially Designated Global Terrorists*. It is critical that DEA's operational activities be maintained in the event of a lapse in appropriations given its essential roles in national security, public safety, and health. Headquarters personnel who provide critical support to excepted activities in the field will be maintained to the extent necessary to support those operations, which would include providing direction and priorities, legal support, and integrity assurance and investigative oversight.

**Antitrust Division (ATR)**: As a Presidential Appointee, the Assistant Attorney General is not subject to furlough. The excepted employees are needed to conduct or directly support ongoing criminal trials, prepare for criminal proceedings that have been scheduled for court (including the handling of arraignments, pleas, and sentencing hearings), and conduct or support ongoing civil litigation in which a continuance cannot be obtained. They will also prepare cases that must be filed due to statutory deadlines, but only when an extension or waiver cannot be obtained and ATR leadership determines that allowing a proposed merger to go forward without objection would pose a reasonable likelihood of peril to property in which the United States has an immediate interest. The work conducted by the Division is funded from no-year appropriations, as are the employees. As a result, these activities may continue during a lapse as long as sufficient carryover funds remain and based upon input from Department leadership regarding mission requirements. However, for the sake of the FY 2026 contingency exercise, the Division is reflecting the level of personnel that would be needed if they had to reduce the personnel to only those most critical during a shutdown, 457 positions (60% of the total 761 positions on board),

**U.S. Trustees Program (USTP)**: The USTP has excepted personnel who would continue to work without pay throughout the lapse. These excepted employees are needed to protect bankruptcy estate property through the appointment and oversight of fiduciaries and through other means. Excepted employees are responsible for coordinating meetings of debtors and creditors, as well as civil and criminal matters, including cases with the U.S. Attorneys and the FBI. Excepted employees are limited to performing only those functions in which there is a definite risk of substantial property loss or violation of law. Of the excepted staff about fifty-eight percent of staff would be attorneys, primarily in Program field offices, and forty-two percent would be other staff. Other staff include auditors in the field, as well as primary and back-up support for ongoing bankruptcy fee collection duties, statutory trustee oversight responsibilities and public affairs activities. In addition, this period would necessitate coverage in the areas of budget, physical security, and facilities support for our excepted field operations.

**National Security Division (NSD)**: As a Presidential Appointee, the Assistant Attorney General is not subject to furlough. The excepted employees are needed to ensure the Department's national security investigations and prosecutions continue, that the Department's national security activities are coordinated both within the Department and with other government agencies, and to represent the Intelligence Community before the Foreign Intelligence Surveillance Court, which will remain open to facilitate the national security activities of the United States in a manner consistent with the law. NSD will also provide legal advice to the Intelligence Community with respect to ongoing national security matters and oversee the Department's administration of the U.S. Government's authorities under the Foreign Intelligence Surveillance Act. In addition, excepted employees will continue work on pending counterterrorism, espionage, export control, sanctions violations and cybersecurity prosecutions and investigations; coordinate and supervise the Department's international terrorism, domestic terrorism, and weapons of mass destruction matters; and continue to review Committee on Foreign Investment in the United States matters, including responding to time-sensitive inquiries regarding the national security implications of corporate conduct in compliance with National Security Agreements. In the event of an extended lapse in appropriations, NSD has indicated the need for 31 additional excepted employees. The majority of the thirty-one positions would fall under the Other Staff category. These positions would include paralegals, security, IT, and travel staff who would be needed for excepted activities.

**Federal Bureau of Investigation (FBI)**: As a Presidential Appointee, the FBI Director is not subject to furlough. All FBI agents and support personnel in the field are excepted from furlough because they directly address and/or provide essential assistance to mitigate imminent threats to human life or property through the FBI's national security and law enforcement operations. In addition, headquarters personnel will be excepted to the extent that they support excepted functions, including field operations. All work conducted will focus on excepted functions in support of national security and law enforcement operations, which includes personnel that provide fingerprint identification services, name check services for criminal and national security investigations, gun checks through the National Instant Criminal Background Check System, critical law enforcement surge efforts, and other essential functions. Non-excepted functions will not proceed during a lapse in appropriations.

**Office of Community Oriented Policing Services (COPS)**: As a Presidential Appointee, the COPS Director is not subject to furlough. The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants. As a result, these activities may continue during a lapse as long as sufficient Salaries and Expenses (S&E) carryover funds remain and based upon input from Department leadership regarding mission requirements. However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.

10

**Office of Justice Programs (OJP)**: As a Presidential Appointee, the Assistant Attorney General for OJP is not subject to furlough.  The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants.  As a result, these activities may continue during a lapse as long as sufficient S&E carryover funds remain and based upon input from Department leadership regarding mission requirements.  However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.

**Office on Violence Against Women (OVW)**: As a Presidential Appointee, the OVW Director is not subject to furlough.  The grants awarded by the Department are funded from no-year appropriations, as are the employees who administer those grants.  As a result, these activities may continue during a lapse as long as sufficient S&E carryover funds remain and based upon input from Department leadership regarding mission requirements.  However, for the sake of the FY 2026 contingency exercise, the grant programs are reflecting the level of personnel who would be needed if they had to reduce the personnel to only those most critical during a shutdown.  For OVW, this level of personnel is approximately sixteen (or thirteen percent of the total 120 current on-board staff).

**Bureau of Prisons (BOP)**: All staff at the Federal prisons, including Public Health Service Officers necessary to provide medical care of inmates, are considered excepted since they have direct daily inmate custody responsibilities.  Employees are also needed to continue inmate custody responsibilities for over 28,800 inmates in contract facilities and process all new designations to federal prisons from the Courts.  Regional and headquarters support will be maintained only to the extent necessary to support excepted operations.  BOP's Buildings and Facilities, Prison Industries, and Commissary accounts have multi-year authority and should have adequate carry-over funding to meet expenses during a lapse in appropriations.

**Foreign Claims Settlement Commission (FCSC)**: As Presidential Appointees, the Commissioners are not subject to furlough.  All staff would be furloughed; therefore, staff activity related to the settlement of foreign claims would be postponed.

**U.S. Parole Commission (USPC)**: The USPC has a total of twenty-six excepted employees: four Attorneys, two Commissioners, and twenty senior staff, hearing examiners, and case analysts.  The excepted USPC employees are needed to respond to requests for emergency warrants and process parole certificates.  Due to the constitutional prohibitions against the suspension of the writ of habeas corpus, this litigation has continued and is expected to continue in all judicial districts.

**Table 2: FY 2026 Department of Justice Contingency Plan On-Board vs. Excepted Employees[3]**

| Name | Total On Board | Excepted | | | | |
|---|---|---|---|---|---|---|
| | | Total | Special Agent | Intel Analyst | Attorney | Other Staff |
| ATF | 5,146 | 4,050 | 2,370 | 287 | 51 | 1,342 |
| ATJ | 33 | 0 | 0 | 0 | 0 | 0 |
| ATR | 761 | 457 | 0 | 0 | 321 | 136 |
| BOP | 36,019 | 34,745 | 15,903 | 0 | 202 | 18,640 |
| CIV | 1,439 | 829 | 0 | 0 | 677 | 152 |
| COPS | 83 | 9 | 0 | 0 | 1 | 8 |
| CRM | 1,060 | 899 | 0 | 0 | 608 | 291 |
| CRS | 53 | 0 | 0 | 0 | 0 | 0 |
| CRT | 632 | 136 | 0 | 0 | 96 | 40 |
| DEA | 8,875 | 7,581 | 4,063 | 651 | 121 | 2,746 |
| ENRD | 506 | 245 | 0 | 0 | 220 | 25 |
| EOIR | 2,559 | 2,314 | 0 | 0 | 1,092 | 1,222 |
| FBI | 36,755 | 36,755 | 13,288 | 3,180 | 222 | 20,065 |
| FCSC | 8 | 3 | 0 | 0 | 1 | 2 |
| INTERPOL | 65 | 65 | 0 | 0 | 2 | 63 |
| LEADERSHIP & JMD | 1,069 | 261 | 0 | 0 | 24 | 237 |
| NSD | 360 | 242 | 0 | 3 | 189 | 50 |
| OCDETF | 52 | 14 | 0 | 4 | 3 | 7 |
| OIG | 554 | 329 | 119 | 0 | 5 | 205 |
| OJP | 796 | 41 | 0 | 0 | 2 | 39 |
| OLC | 23 | 21 | 0 | 0 | 18 | 3 |
| OSG | 48 | 38 | 0 | 0 | 22 | 16 |
| OVW | 120 | 16 | 0 | 0 | 2 | 14 |
| PARDON | 33 | 8 | 0 | 0 | 3 | 5 |
| TAX | 412 | 218 | 0 | 0 | 174 | 44 |
| USA | 11,191 | 7,368 | 40 | 45 | 4,802 | 2,481 |
| USMS | 5,535 | 5,201 | 3,820 | 30 | 22 | 1,329 |
| USPC | 40 | 26 | 0 | 0 | 4 | 22 |
| USTP | 904 | 420 | 0 | 0 | 242 | 178 |
| **TOTAL** | 115,131 | 102,291 | 39,603 | 4,200 | 9,126 | 49,362 |

[3] This chart includes components that will be eliminated on October 1, 2025, because it reflects the number of personnel onboard at the time the FY 2026 Contingency Plan was developed.

**Table 3: FY 2026 Department of Justice Contingency Plan Excepted Employees by Category**

| Categories | Employees Excepted from Furlough | | | | |
|---|---|---|---|---|---|
| | Total | Agent | Intel Analyst | Attorney | Other |
| Category 1 | 4,930 | 390 | 97 | 902 | 3,541 |
| Category 2 | 1,408 | 0 | 0 | 1,016 | 392 |
| Category 3 | 3,190 | 259 | 36 | 300 | 2,595 |
| Category 4 | 30 | 0 | 0 | 9 | 21 |
| Category 5 | 92,733 | 38,954 | 4,067 | 6,899 | 42,813 |
| **TOTAL** | 102,291 | 39,603 | 4,200 | 9,126 | 49,362 |

**Category 1** = Employees whose compensation is financed by a resource other than annual appropriations.

**Category 2** = Employees necessary to perform activities expressly authorized by law.

**Category 3** = Employees necessary to perform activities necessarily implied by law (including Presidentially-appointed and Senate-confirmed employees).

**Category 4** = Employees necessary to the discharge of the President's constitutional duties and powers.

**Category 5** = Employees necessary to protect life and property.

13

Exhibit C

# Comparisons Between BFDF (Civil Detention) And MSCF (Imprisonment)

| Buffalo Federal Detention Facility | Mid-State Correctional Facility |
|---|---|
| **Structure**: Cells (Double Bunking) | **Structure**: Dormitory-Styled with almost half a unit's occupancy being single rooms; which Petitioner was in for about 4 years. |
| **Security Level**: High; with escorted movements. | **Security Level**: Medium; without escorted movements. |
| **Lockdown**: Approx. 17.25 hours per day. | **Lockdown**: 6 hours per day; 4 hours on the weekends. |
| **Privacy:** A detainee must choose between restricting his bowel movements throughout the extensive periods of lockdown until lockout, or subject the other to the unpleasant smells of feces; all while the toilet is about 5' from the bunk. Eavesdropping device in cell. | **Privacy**: Public bathroom with private compartments. The engagement of activities for enjoyment and recreation are done in the dayroom, which is away from the rooms; where equanimity is sought. No eavesdropping devices. |
| **Nuisance**: Light on 24/7 in cell. The dayroom is immediately in front of cells, where guys confabulate and engage, for hours, in activity for enjoyment and recreation. | **Nuisance**: Incarcerated persons control light in rooms; which have on and off switches. |
| **Recreation**: About 6.75 hours per day. | **Recreation**: Approx. 16.25 hours per day; 18.25 on the weekends. |
| **Law Library Access**: 5 hours per week; with two discretional hours on the weekends. | **Law Library Access**: Over 17 hours per week. |
| **Grooming**: Barbershop is averaged at once every 3 months. | **Grooming**: Every Friday. |
| **Cost of Living**: A phone call is about $3.15 per 45 minutes. Commissary is over 300% increase; plus tax, i.e., an item that cost $0.29 at MSCF cost $0.90 plus tax. | **Cost of Living**: A phone call was about $0.83 per 30 minutes at the time of incarceration. |
| **Dignity**: Assigned bed number is used as identity, despite the availability of wristbands that manifest one's identity. Also, a detainee must answer to such disparagement or otherwise subject themselves to potential reprisal, i.e., I am referred to as "128A." instead of my name. | **Dignity**: ID cards are carried by incarcerated individuals, who are address by their names or other informal references of masculinity, i.e., guy. |
| **Visitation**: No contact visit. | **Visitation**: Contact visit. |
| **Packages:** Allowed only for travel or release. | **Packages:** Monthly food & personal property packages are allowed. |

Exhibit D

09/23/25    SDCP008    INMATE DISCIPLINARY HISTORY    *FPMS*    PAGE 004

NO DISCIPLINARY HISTORY TO PRINT FOR FACILITY MIDSTATE    FOR INMATE 19A3859

NOTE: ONLY COMPLETED HEARINGS ARE SHOWN

***SUCCESSFUL PRINT COMPLETION***

Exhibit E



January 4, 2023

Mr. Najay Cummings
9A Cooper Pl
Bronx, NY 10475

Dear Najay:

Congratulations!  You attained a grade point average between 3.25 to 3.79 during the Fall 2022 semester and, in recognition of your fine academic performance, you have been named to the Dean's List. The Dean's List, as well as the President's List, is posted in the hallway of the Classroom/Administrative Building.

This is an outstanding achievement.  Best wishes for continued success.

Sincerely,

Michael A. Oriolo
Provost

```
09/06/24              ACADEMIC EDUCATION        KEDUM19
                      SUMMARY PROFILE
DIN 19A3859  CUMMINGS, NAJAY        RECP DEGREE
DOB 05/02/1995                      DOCS DEGREE  ASSOC DEGREE   12/23
      LATEST TEST                HSE
TAB D  READ V      C 09.0 T 09.0 CUM      552 564 586 535 561 2798   PASS
02/20  MATH C 10.0 P 12.9 T 11.2 LATE 03/20 TR 552 564 586 535 561 2798
     LATEST          LANG DOMINANCE ENGLISH        BP NA
COUNTY OF RESIDENCE              ADMISSION DATE 10/22/2019
                                FROM        TO        HRS
          PROG          FAC     DATE        DATE      ATTEND
     COLLEGE OTHER      480    02/12/21      / /       0742
     HSE ALL CONT       480    11/13/20    02/03/23    0955
     COLLEGE OTHER      480    07/10/20    10/09/20    0070
     HSE ALL CONT       480    03/13/20      / /       0105
     PREHSE ALL CNT     480    12/20/19    03/06/20    0060



       NO MORE DATA

                                    NEXT DIN:
```

Student AcademicTranscript

H00180350 Karen Scott
Sep 06, 2024 08:31 am

# Student AcademicTranscript

☞ This is not an official transcript. Courses which are in progress may also be included on this transcript.

Information for Najay Cummings
Institution Credit   Transcript Totals

*Transcript Data*
**STUDENT INFORMATION**

Name :         Najay Cummings
**Curriculum Information**

Current Program
Major:                   Lib Arts Sci: General Studies
Advisor:       Robin A. Riecker

\*\*\*Transcript type:UOFF is NOT Official \*\*\*

**INSTITUTION CREDIT    -Top-**

Term: Summer 2020
**Major:**                      Non-matriculated
**Academic Standing:**
**Subject Course Campus Level Title**

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---|
| EN | 111 | Mid-State Correction Facility | U | College Writing | A | 3.000 | 12.00 | |

**Term Totals (Undergraduate)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |
| Cumulative: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |

Unofficial Transcript

Term: Fall 2020
**Major:**                  Lib Arts Sci: General Studies
**Academic Standing:**      Good Standing
**Subject Course Campus Level Title**

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | R |
|---------|--------|--------|-------|-------|-------|--------------|----------------|---|
| MA | 124 | Mid-State Correction Facility | U | Contemporary Math | A+ | 3.000 | 12.00 | |

**Term Totals (Undergraduate)**

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |
| Cumulative: | 6.000 | 6.000 | 6.000 | 6.000 | 24.00 | 4.00 |

9/6/24, 8:32 AM                                                    Student Academic Transcript

Unofficial Transcript

**Term: Spring 2021**
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points R |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| SS | 161 | Mid-State Correction Facility | U | Introductory Sociology | A | 3.000 | 12.00 |

**Term Totals (Undergraduate)**

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |
| Cumulative: | 9.000 | 9.000 | 9.000 | 9.000 | 36.00 | 4.00 |

Unofficial Transcript

**Term: Summer 2021**
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points R |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| HU | 161 | Mid-State Correction Facility | U | Intro to the Film | A- | 3.000 | 11.10 |

**Term Totals (Undergraduate)**

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 11.10 | 3.70 |
| Cumulative: | 12.000 | 12.000 | 12.000 | 12.000 | 47.10 | 3.92 |

Unofficial Transcript

**Term: Fall 2021**
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points R |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| MA | 127 | Mid-State Correction Facility | U | Mathematical Statistics I | A+ | 3.000 | 12.00 |
| SS | 237 | Mid-State Correction Facility | U | Superheroes and Society | A- | 3.000 | 11.10 |

**Term Totals (Undergraduate)**

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 6.000 | 6.000 | 6.000 | 6.000 | 23.10 | 3.85 |
| Cumulative: | 18.000 | 18.000 | 18.000 | 18.000 | 70.20 | 3.90 |

Unofficial Transcript

**Term: Spring 2022**
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points R |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| HU | 158 | Mid-State Correction | U | Ethics | A | 3.000 | 12.00 |

9/6/24, 8:32 AM                                                    Student Academic Transcript

Facility

## Term Totals (Undergraduate)

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |
| Cumulative: | 21.000 | 21.000 | 21.000 | 21.000 | 82.20 | 3.91 |

Unofficial Transcript

Term: Summer 2022
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | R |
|---|---|---|---|---|---|---|---|---|
| SC | 141 | Mid-State Correction Facility | U | Fund of Biology I | B+ | 4.000 | 13.20 | |

### Term Totals (Undergraduate)

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 4.000 | 4.000 | 4.000 | 4.000 | 13.20 | 3.30 |
| Cumulative: | 25.000 | 25.000 | 25.000 | 25.000 | 95.40 | 3.81 |

Unofficial Transcript

Term: Fall 2022
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing
**Additional Standing:**      Dean's List

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | R |
|---|---|---|---|---|---|---|---|---|
| BU | 111 | Mid-State Correction Facility | U | Bus Organization & Management | A | 3.000 | 12.00 | |
| EN | 112 | Mid-State Correction Facility | U | College Literature | B | 3.000 | 9.00 | |
| SS | 151 | Mid-State Correction Facility | U | Intro Psychology | A- | 3.000 | 11.10 | |

### Term Totals (Undergraduate)

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|---|---|---|---|---|---|---|
| Current Term: | 9.000 | 9.000 | 9.000 | 9.000 | 32.10 | 3.56 |
| Cumulative: | 34.000 | 34.000 | 34.000 | 34.000 | 127.50 | 3.75 |

Unofficial Transcript

Term: Spring 2023
**Major:**                    Lib Arts Sci: General Studies
**Academic Standing:**        Good Standing
**Additional Standing:**      President's List

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality Points | R |
|---|---|---|---|---|---|---|---|---|
| BU | 112 | Mid-State Correction Facility | U | Business Communications | A | 3.000 | 12.00 | |
| EN | 225 | Mid-State Correction Facility | U | Public Speaking | A | 3.000 | 12.00 | |
| HU | 172 | Mid-State Correction | U | Survey World Religions | A+ | 3.000 | 12.00 | |

Student AcademicTranscript

| Subject | Course | Campus | Level | Title | | Grade | Credit Hours | Quality Points |
|---------|--------|--------|-------|-------|--|-------|--------------|----------------|
| | | Facility | | | | | | |
| SS | 132 | Mid-State Correction Facility | U | Modern World Civilizations | | A | 3.000 | 12.00 |

### Term Totals (Undergraduate)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 12.000 | 12.000 | 12.000 | 12.000 | 48.00 | 4.00 |
| Cumulative: | 46.000 | 46.000 | 46.000 | 46.000 | 175.50 | 3.81 |

Unofficial Transcript

Term: Summer 2023
**Major:** Lib Arts Sci: General Studies
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality R Points |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| HE | 130 | Mid-State Correction Facility | U | Wellness | B | 3.000 | 9.00 |
| SS | 191 | Mid-State Correction Facility | U | Cultural Anthropology | A | 3.000 | 12.00 |
| SS | 253 | Mid-State Correction Facility | U | Social Psychology | A | 3.000 | 12.00 |

### Term Totals (Undergraduate)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 9.000 | 9.000 | 9.000 | 9.000 | 33.00 | 3.66 |
| Cumulative: | 55.000 | 55.000 | 55.000 | 55.000 | 208.50 | 3.79 |

Unofficial Transcript

Term: Fall 2023
**Major:** Lib Arts Sci: General Studies
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality R Points |
|---------|--------|--------|-------|-------|-------|--------------|------------------|
| SS | 122 | Mid-State Correction Facility | U | American History Since 1865 | A | 3.000 | 12.00 |
| SS | 164 | Mid-State Correction Facility | U | Understanding Addictions | B | 3.000 | 9.00 |
| SS | 203 | Mid-State Correction Facility | U | Ind Project Social Science | C+ | 3.000 | 6.90 |

### Term Totals (Undergraduate)

| | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
|--|---------------|--------------|--------------|-----------|----------------|-----|
| Current Term: | 9.000 | 9.000 | 9.000 | 9.000 | 27.90 | 3.10 |
| Cumulative: | 64.000 | 64.000 | 64.000 | 64.000 | 236.40 | 3.69 |

Unofficial Transcript

Term: Spring 2024
**Major:** Lib Arts Sci: General Studies
**Academic Standing:** Good Standing

| Subject | Course | Campus | Level | Title | Grade | Credit Hours | Quality R Points |
|---------|--------|--------|-------|-------|-------|--------------|------------------|

9/6/24, 8:32 AM                                                  Student Academic Transcript

| BU | 238 | Mid-State U Correction Facility | Intro to Entrepreneurship | A | 3.000 | 12.00 |

**Term Totals (Undergraduate)**

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
| --- | --- | --- | --- | --- | --- | --- |
| Current Term: | 3.000 | 3.000 | 3.000 | 3.000 | 12.00 | 4.00 |
| Cumulative: | 67.000 | 67.000 | 67.000 | 67.000 | 248.40 | 3.70 |

Unofficial Transcript

**TRANSCRIPT TOTALS (UNDERGRADUATE)    -Top-**

|  | Attempt Hours | Passed Hours | Earned Hours | GPA Hours | Quality Points | GPA |
| --- | --- | --- | --- | --- | --- | --- |
| Total Institution: | 67.000 | 67.000 | 67.000 | 67.000 | 248.40 | 3.70 |
| Total Transfer: | 0.000 | 0.000 | 0.000 | 0.000 | 0.00 | 0.00 |
| Overall: | 67.000 | 67.000 | 67.000 | 67.000 | 248.40 | 3.70 |

Unofficial Transcript

**RELEASE: 8.7.2.9**

© 2024 Ellucian Company L.P. and its affiliates.



# Certificate of Recognition

This Certifies That

Najay Cummings

has been awarded this Certificate for

continually outstanding performance as HSE 1 AM IPA/teacher aide

01/27/2023
Date

Teacher



# Certificate of Recognition

This Certifies That

Najay Cummings

Has been awarded this Certificate for:

continuing outstanding performance as HSE 4 AW IPA/teacher aide

12/13/2021
Date

L. Sanger, Teacher



# Certificate of Recognition

This Certifies That

Najay Cummings

Has been awarded this Certificate for:

continuing outstanding performance as HSE ADM IPA/teacher aide

12/13/2021

Date

L. Bourgeond Teacher



# Certificate of Recognition

This Certifies That

Najay Cummings

Has been awarded this Certificate for

outstanding performance as TPA/teacher aide for HSE 4 AM

09/01/2021
Date

L. Zingaro   Teacher



# Certificate of Recognition

This Certifies That

Nancy Cummings

Successfully completed the High School Equivalency program

06-02-2020

Date

EXCELSIOR Jung Teacher

FORM 3250 (10/21)          NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_                    NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Negüy_          DIN _19 A3959_    HOUSING UNIT _26_    DATE: _11/07/___

CHECK ONE:

| | |
|---|---|
| PAY INCREASE | _____ |
| PAY DECREASE | _____ |
| GENERAL EVALUATION | X _is at top pay grade_ |
| FINAL EVALUATION | _____ |

| | |
|---|---|
| H.S. DIPLOMA/EQUIV. | YES _X_  NO ____ |
| READ/MATH LEVEL | _IPA - teacher aide_ |
| DATE ENTERED PROG. | _11/16/2020_ |
| PAY ITEM NUMBER | _562404_ |

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfills | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criterias | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

_Incarcerated Individual Cummings is an HSE 1 PM IPA teacher aide. The IPA is responsible for completing paperwork and for assisting students. Incarcerated Individual Cummings fulfills both duties. His paperwork is neat, precise, and on time. He assists students by_

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: _correcting assignments. When there are errors, he reviews the skill with the As students study and practice, many request help from him. He helps them review a forgotten skill or learn a new concept. There is a student that is below level, and Incarcerated Individual Cummings works patiently and steadily with him. There is a student that speaks English_

GENERAL COMMENTS: _as his non-dominant language, and Incarcerated Individual Cummings also works patiently and steadily with him, sometimes using a language dictionary. His knowledge in language art (reading/writ...) social studies, science, and ... an extra opportunity for ... to succeed with testing. He completes room materials & ... He considers the possibly display a strong work ethic._

_[signature]_
INCARCERATED INDIVIDUAL'S SIGNATURE

_[signature]_  Teacher
EMPLOYEE'S SIGNATURE        TITLE        11/07/__  DATE

DISTRIBUTION:  White – Guidance Unit  |  Yellow – Incarcerated Individual  |  Pink – Evaluator

FORM 3250 (10/21)                    NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY __MidState__                          NAME OF PROGRAM __HSE 1__

NAME: __Cummings, Najay__          DIN __19k3859__    HOUSING UNIT __28__    DATE: __08/16/20__

CHECK ONE:

_completed late due to school break 1/8/14_

PAY INCREASE _____          H.S. DIPLOMA/EQUIV.   YES __X__  NO ____

PAY DECREASE _____          READ/MATH LEVEL __IPA teacher aide__

GENERAL EVALUATION __X__ is at top pay grade          DATE ENTERED PROG. _____

FINAL EVALUATION _____          PAY ITEM NUMBER __562401__

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cumming | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfills | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criteria | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

Incarcerated Individual Cumming is the HSE 1 AM IPA teacher and He is also the IPA teacher aide for the HSE 1 PM. The IPA is responsible for completing paperwork and for assisting students. Incarcerated Individual Cumming fulfills both duties in a capable manner. The paperwork is on time, neat, and precise. He

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: assists students by correcting assignments and teaching the skills used on them. He works individually with students or with small groups as they learn a new skill or as they review a forgotten skill. Students request help from him. If he notices a student having

GENERAL COMMENTS: difficulty, he reaches out to the student. His knowledge in writing/reading (language arts) social studies, science, and math is an asset. When he is in contact with testing he greatly encourages and practices with the students that are lower than typical for HSE class. He completes extra prep at the end of the module to reduce down time when the session ends. Displaying a strong work ethic ... positive demeanor

_(signature)_
INCARCERATED INDIVIDUAL'S SIGNATURE

_(signature)_  Teacher
EMPLOYEE'S SIGNATURE                    TITLE                    DATE
09/16/20___

DISTRIBUTION:   White – Guidance Unit  |  Yellow – Incarcerated Individual  |  Pink – Evaluator

FORM 3250 (10/21)     NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY _MidState_     NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Nyjay_     DIN _19A 3859_     HOUSING UNIT _26_     DATE: _09/09/___

CHECK ONE:

| | | |
|---|---|---|
| PAY INCREASE | _____ | H.S. DIPLOMA/EQUIV.   YES _X_   NO ____ |
| PAY DECREASE | _____ | READ/MATH LEVEL _IPA teacher aide_ |
| GENERAL EVALUATION | _X_ top pay grade | DATE ENTERED PROG. _11/16/2020_ |
| FINAL EVALUATION | _____ | PAY ITEM NUMBER _562404_ |

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfills | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criteria. | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

Incarcerated Individual Cummings is the HSE PM IPA teacher aid. He is also the IPA teacher aide for HSE 1 AM. The IPA is responsible for completing paperwork and for assisting students. Incarcerated Individual Cummings fulfills both duties in a capable manner. The paperwork is

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: on time, neat, and precise. He assists students by ____ assignments and ____ the skill ____ on them. He works individually with students or with small groups as they learn a new skill or as they review a forgotten skill. Students may

GENERAL COMMENTS: request help from him. If he notices a student having difficulty he reaches out to that student. His knowledge in writing (reading (language arts) social studies, science, and math ____ an extra opportunity for ____ to succeed with ____. He doesn't hesitate to help students whose dominant language is not English. He completes forms which ____ the end of the ____ which ____ invaluable. He continues

_____
INCARCERATED INDIVIDUAL'S SIGNATURE

_____
EMPLOYEE'S SIGNATURE     TITLE Teacher     DATE 09/12/22

DISTRIBUTION:   White – Guidance Unit  |  Yellow – Incarcerated Individual  |  Pink – Evaluator

FORM 3250 (10/21)

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_          NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Nyjay_          DIN _14A 3259_    HOUSING UNIT _26_    DATE: _04/26/20_

CHECK ONE:

PAY INCREASE _____          H.S. DIPLOMA/EQUIV.    YES _X_  NO ____

PAY DECREASE _____          READ/MATH LEVEL _IPA - teacher aide_

GENERAL EVALUATION _____          DATE ENTERED PROG. _03/01/2021_

FINAL EVALUATION _X_          PAY ITEM NUMBER _562401_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfilled | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criteria | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

Incarcerated Individual Cummings has been the IPA teacher for HSE AM since 03/01/2021. He continually displayed dependability with all paperwork. He displayed consistent effort when he assisted students. He corrected students'

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:
assignments and there were errors or redirect with their study skills. As students finished and practiced, they would request help from him. He would help them learn a new concept or review a forgotten one. His knowledge in language arts (reading/writing), social

GENERAL COMMENTS: studies, science, and math was outstanding. Opportunity for students to succeed with testing. He completed packet updates at the end of the module without reminder. When the high school equivalent

[continued handwritten text on right side, partially legible]

_____
INCARCERATED INDIVIDUAL'S SIGNATURE

_____ King ___ Teacher    _____
EMPLOYEE'S SIGNATURE          TITLE          DATE

DISTRIBUTION:  White – Guidance Unit  |  Yellow – Incarcerated Individual  |  Pink – Evaluator

FORM 3250 (10 21)

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY __Midstate__     NAME OF PROGRAM __HSE 1__

NAME __Cummings, Najay__     DIN __19A3859__     HOUSING UNIT __2G__     DATE: __05/09/2022__

CHECK ONE:

PAY INCREASE _____     H.S. DIPLOMA/EQUIV.     YES __X__     NO _____

PAY DECREASE _____     READ/MATH LEVEL __IPA teacher aide__

GENERAL EVALUATION __X__ is at top pay grade     DATE ENTERED PROG. __01/06/2020__

FINAL EVALUATION _____     PAY ITEM NUMBER __562404__

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfills | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criteria. | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

Incarcerated Individual Cummings is the HSE 1 PM IPA teacher aide. He is also the IPA teacher aide for HSE 1 AM. The IPA has the duty to complete paperwork and to assist students. Incarcerated Individual Cummings fulfills the criteria in both areas.

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: The paperwork is completed timely, neatly, and precisely. He assists students by correcting assignments and by helping students study the needed skills for the TABE/RA/GED exams. He works with students learning new skills and reviewing forgotten skills. Generally, students request

GENERAL COMMENTS: help from him. If he notices a student having difficulty, he reaches out to see if help is wanted. His knowledge in language arts, social studies, science, and math is an extra opportunity for students to succeed with testing. He is beginning to update room posters/information from TASC to GED. He maintains COVID policies. He completes room upkeep at the end of each module without reminders.

He continues to daily display a positive demeanor with a strong work ethic.

_____
INCARCERATED INDIVIDUAL'S SIGNATURE

_____ Teacher 05/09/22
EMPLOYEE'S SIGNATURE     DATE

DISTRIBUTION—White  Program Folder      Yellow  Incarcerated Individual     Pink  Employee

FORM 3280 (10-21)

NEW YORK STATE DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## PROGRAM PROGRESS REPORT

CORRECTIONAL FACILITY MidState          NAME OF PROGRAM HSE 1

NAME: Cummings, Najay          DIN 19A3859   HOUSING UNIT 2G   DATE: 05/06/2022

CHECK ONE:

PAY INCREASE _____          H.S. DIPLOMA/EQUIV.   YES X   NO _____

PAY DECREASE _____          READ/MATH LEVEL IPA teacher aide

GENERAL EVALUATION X is at top pay grade          DATE ENTERED PROG. 03/01/2021

FINAL EVALUATION _____          PAY ITEM NUMBER 562401

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfils | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | criteria. | | | | |

EXPLAIN REASONS FOR ABOVE NOTED PROGRESS OR LACK THEREOF:

Incarcerated Individual Cummings is the HSE 1 AM IPA teacher aide. He is also the IPA teacher aide for HSE 1 PM. The IPA has the duty to complete paperwork and to assist students. Incarcerated Individual Cummings fulfills the criteria in both areas. The paperwork is completed timely, neatly, and precisely. He assists students

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: by correcting assignments and by helping students study the needed skills for the TABE/RA/GED exams. He works with students learning new skills and reviewing forgotten skills. Generally, students request help from

GENERAL COMMENTS: him. If he notices a student having difficulty, he reaches out to see if help is wanted. His knowledge in language arts, social studies, science, and math is an extra opportunity for students to succeed with testing. He is beginning to update room posters/information from TASC to GED. He maintains COVID policies. He completes room upkeep at the end of each module without remainder and continues to display daily a positive demeanor with a strong work ethic.

INCARCERATED INDIVIDUAL'S SIGNATURE

L Zang Teacher .05/16/2022
EMPLOYEE'S SIGNATURE          DATE

DISTRIBUTION: White-Teacher to Unit | Yellow-Incarcerated Individual

FORM 3250 (2/94)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY MidState          NAME OF PROGRAM HSE 1

NAME: Cummings, Nejay     DIN # 19 A 3259    HOUSING UNIT 26    DATE: 02/07/

CHECK ONE:

| | | READING LEVEL | IPA teacher aide |
|---|---|---|---|
| PAY INCREASE | | | |
| PAY DECREASE | is at | GED OR H.S. DIP. | YES X NO __ |
| GENERAL EVALUATION | X top pay grade | DATE ENTERED PROG. | 11/16/2020 |
| FINAL EVALUATION | | PAY ITEM NUMBER | 562.404 |

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE/PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfills | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | listed | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE/EMPLOYABILITY | criteria | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

Incarcerated Individual Cummings is the HSE PM IPA teacher aide. He is also the HSE AM IPA teacher a_ The teacher aide duties are completing paperwork an assisting students. Incarcerated Individual Cummin__ fulfills criteria in both areas. The

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: paperwork is completed precisely neatly and timely to assure students by correct assignment and reviewing the concepts used. He helps students review the needed skills for the TA HA/HSE exam. He works with students learn__ concepts. Students require of help learn__

GENERAL COMMENTS: If he notice __ student __ he reaches out to that student. He displays a posit_ encouraging demeanor. He uses his knowledge in with_ social studies, sc__ read __ and earth as an extra opportunity for stud__ to succeed with testing. Comple__ exam sheet at th__ end of each module with Cummings the maintain__

INMATE'S SIGNATURE

EMPLOYEES'S SIGNATURE     TITLE Teacher     DATE 02/08/20__

DISTRIBUTION: White -Evaluator, Pink -Guidance Unit, Yellow -Inmate

FORM 3250 (7/11)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY MidState     NAME OF PROGRAM HSE 1

NAME: Cummings, Nigey    DIN _____    HOUSING UNIT 2G    DATE: _____

CHECK ONE:

| | |
|---|---|
| PAY INCREASE | _____ |
| PAY DECREASE | _____ |
| GENERAL EVALUATION | X _is at_ top pay grade |
| FINAL EVALUATION | |

READING LEVEL   IPA   _____

GED OR H.S. DIP.   YES X   NO ___

DATE ENTERED PROG.   03/01/2021

PAY ITEM NUMBER   S62901

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Excellent | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Excellent | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | Excellent | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | Follows | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | All | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | Trusted | | | | |
| APTITUDE / EMPLOYABILITY | Excellent | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

Incarcerated Individual Cummings is the HSE AM IPA teacher aid. He is also the HSE PM IPA teacher aide. The IPA duties are to complete paperwork and to assist students. All paperwork is neatly done. He assist students by covering IPA assignments and reviewing them with

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: the students. He is well-versed all subjects - writing, social studies, science, reading and math. He helps students learn and review the concepts needed for the TABE/RA/TASC. Students request help from him. He may reach out to a student whom he notices is having difficulty. Incarcerated Individual Cummings

GENERAL COMMENTS: is positive and a good agent. He creates wall posters/monthly calendar and clarify pertinent study information. He does the end of class chores without reminder. He maintain CO...ti policies.

_____
INMATE'S SIGNATURE

_____    _____    _____
EMPLOYEE'S SIGNATURE      TITLE      DATE

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3250 (7/11) STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY Mid State NAME OF PROGRAM HSE 1

NAME: Cummings, Najay DIN [illegible] HOUSING UNIT [illegible] DATE: [illegible]

CHECK ONE:

PAY INCREASE ______ READING LEVEL IPA teacher [illegible]

PAY DECREASE ______ GED OR H.S. DIP. YES X NO ___

GENERAL EVALUATION X To at the pay grade DATE ENTERED PROG. 11/16/2020

FINAL EVALUATION ______ PAY ITEM NUMBER 562404

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Incarcerated | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | Individual | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | Cummings | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | fulfills | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | all | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | listed | | | | |
| APTITUDE / EMPLOYABILITY | criteria. | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

Incarcerated Individual Cummings is the HSE PM IPA teacher aide. He is also the HSE AM IPA teacher aide. The IPA duties are to complete paperwork and to assist students. All the paperwork is neatly done. He assists students by correcting assignments and reviewing them with the students. He is

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

well versed in all subjects - reading, social studies, writing, and math. He helps students learn new concepts and helps students review concepts needed for the TABE or TASC. Students request help from him, or he may reach out to a student who may be struggling/having difficulty.

GENERAL COMMENTS: Incarcerated Individual Cummings is positive and encouraging. The PM class has several students who do not speak English as their primary language. Incarcerated Individual Cummings [illegible] [illegible] and [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] [illegible] COVID-19 [illegible]

[signature]
INMATE'S SIGNATURE

[signature] Teacher
EMPLOYEE'S SIGNATURE TITLE DATE

08/05/2021

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3250 (7/11)

STATE OF NEW YORK – DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_          NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Harry_          DIN _111 3464_     HOUSING UNIT _26_     DATE: _02/10/2_

CHECK ONE:

PAY INCREASE _____          READING LEVEL _TPA to current_

PAY DECREASE _____          GED OR H.S. DIP.    YES _X_    NO ___

GENERAL EVALUATION _X top pay grade_    DATE ENTERED PROG. _03-01-21_

FINAL EVALUATION _____       PAY ITEM NUMBER _567401_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | Exceptional | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | dedication | | | | |
| EFFORT AND INITIATIVE | knowledge | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | exhibits | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | will | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | hard of | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | in the work | | | | |

**EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:**

_Incarcerated Individual Cummings is a HSE 2 AM IPA teacher aide. He is also the HSE 1 PM IPA teacher aide. The IPA duties are completing paperwork and assisting students. Incarcerated Individual Cummings fits the criteria in both areas. He completes paperwork precisely, and works with the outside students..._

**LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:**

_...by reviewing the lesson aide he helps students study the needed skill for the exam. EA/HSE examine the work and identify learning gaps and correct returning forgotten concepts. Students request help from him. He notices a student having difficulty he reaches out to that student. He has/displays IT writing, copied his..._

**GENERAL COMMENTS:**

_...science, reading, comprehension... is not getting opportunity for... He completes room upkeep at the end of each module without reward. He was here... COVID pandemic. Incarcerated Individual Cummings has been... the position approved, if given the opportunity to daily display a strong work ethic with a positive behavior..._

INMATE'S SIGNATURE

_(signature)_

EMPLOYEE'S SIGNATURE          TITLE          DATE

_Teacher_    _02/10/22_

DISTRIBUTION: White - Guidance Unit,  Yellow - Inmate,  Pink - Evaluator

FORM 3250 (7/11)    STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_    NAME OF PROGRAM _General Pop_

NAME: _Cummings, Nigel_    DIN _____    HOUSING UNIT _1F_    DATE: _____

CHECK ONE:

PAY INCREASE _____    READING LEVEL _____

PAY DECREASE _____    GED OR H.S. DIP.    YES_____ NO_____

GENERAL EVALUATION _____    DATE ENTERED PROG. _12/20_

FINAL EVALUATION _____X_____    PAY ITEM NUMBER _447001_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | ✓ | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | ✓ | | | | |
| EFFORT AND INITIATIVE | ✓ | | | | |
| ATTITUDE TOWARD PEERS | ✓ | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | ✓ | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | ✓ | | | | |
| ABILITY TO FOLLOW DIRECTIONS | ✓ | | | | |
| QUALITY OF WORK | ✓ | | | | |
| DISPLAYS SELF CONTROL | ✓ | | | | |
| DEPENDABILITY | ✓ | | | | |
| APTITUDE / EMPLOYABILITY | ✓ | | | | |

EXPLAIN INAMTE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_Cummings has successfully completed all necessary_
_requirements presented to him on his completion in_
_General Population_

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

_____

GENERAL COMMENTS:

_____

_Not available to sign_
INMATE'S SIGNATURE

_____    _____    _____
EMPLOYEE'S SIGNATURE    TITLE    DATE

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3260 (12/05)

*Please give to*

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONAL SERVICES

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY __Mid State__      NAME OF PROGRAM __HSE 1__

NAME: __Cummings Najoy__    DIN # __11 A 3659__   HOUSING UNIT __1F__  DATE: __02/08/__

CHECK ONE:

| | | |
|---|---|---|
| PAY INCREASE | X | READING LEVEL __IPA - teacher aide__ |
| PAY DECREASE | | GED OR H.S. DIP. __YES X  NO __ |
| GENERAL EVALUATION | | DATE ENTERED PROG. __11/16/2020__ |
| FINAL EVALUATION | | PAY ITEM NUMBER __562.404__ |

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE/PUNCTUALITY | Immedi | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | | | | |
| EFFORT AND INITIATIVE | Cummings | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | fulfill | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | all | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | hold | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE/EMPLOYABILITY | Critical | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

Inmate Cummings is the HSE 1 PM IPA teacher aide. He has adjusted well to the IPA position. The IPA does the paperwork and assisting students. He completes paperwork neatly and timely. He assembles our student folders, and he explains

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: their function to the students. He assists the students by correcting assignments, clarifies the troublesome skills. He also helps students learn or review concepts in reading, social studies, writing, and math. He reacts to the students in a positive, encouraging

GENERAL COMMENTS: manner. He maintains COVID 19 protocol.

Inmate _____

INMATE'S SIGNATURE

_____    Teacher    02/08/___
EMPLOYEE'S SIGNATURE    TITLE    DATE

DISTRIBUTION: White -Guidance Unit, Yellow -Inmate, Pink -Evaluator

FORM 3250 (7/11)     STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _Midstate_          NAME OF PROGRAM _HSE 1_

NAME: _Cummings Nagy_     DIN _19 A 3869_ HOUSING UNIT _15_     DATE: _06/05/__

CHECK ONE:

PAY INCREASE          _X_              READING LEVEL _9.0_  _the math_
                                      TASC
PAY DECREASE          _____      GED OR H.S. DIP.    YES _✓_  NO ___

GENERAL EVALUATION    _____      DATE ENTERED PROG. _03/16/2020_

FINAL EVALUATION      _____      PAY ITEM NUMBER     _____

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_Inmate Cummings was in Pre-HSE and took the official reading and math TABE. He achieved high school equivalency level in both subjects. He took the RA and passed. He took the 05/2020 TASC_

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: _He was promoted to HSE class. He was in class approx. 1 day due to the circumstances of covid-19. He passed the TASC and earned his HSE diploma. He is still on the waiting-time sheet at this_

GENERAL COMMENTS: _____

_____

_Inmate _____ His diploma be placed with him._

_____ INMATE'S SIGNATURE

_____ EMPLOYEE'S SIGNATURE          _Teacher_ TITLE          _06/05/2020_ DATE

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3250 (7/11)          STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_          NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Najay_          DIN _9 3 3653_     HOUSING UNIT _23_     DATE: _____

CHECK ONE:

PAY INCREASE _X_          READING LEVEL _IPA_ _____

PAY DECREASE _____          GED OR H.S. DIP. _____ YES _X_ NO _____

GENERAL EVALUATION _____          DATE ENTERED PROG. _____

FINAL EVALUATION _____          PAY ITEM NUMBER _562404_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | ✓ | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | | | | |
| EFFORT AND INITIATIVE | ✓ | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | ✓ | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | ✓ | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | ✓ | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | ✓ | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_____

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

_____

GENERAL COMMENTS:

_____

_____
INMATE'S SIGNATURE

_____     _____     _____
EMPLOYEE'S SIGNATURE               TITLE                          DATE

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3250 (7/11)    STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _MidState_    NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Nyjay_    DIN _____    HOUSING UNIT _23_    DATE: _____

CHECK ONE:

PAY INCREASE _____X_____    READING LEVEL _IPA - teacher___

PAY DECREASE _____    GED OR H.S. DIP.    YES _X_  NO ___

GENERAL EVALUATION _____    DATE ENTERED PROG. _03/08/2021_

FINAL EVALUATION _____    PAY ITEM NUMBER _562401_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | *smooth* | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | *Cummings* | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | *added* | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | *will* | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | *assist* | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | *will be* | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_Inmate Cummings is the HSE 1 AM IPA teacher as the also_
_the HSE 1 PM IPA teacher and he added the material_
_a smooth transition. The IPA duties are the same_
_the PM — paperwork and assisting student. The paper_

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

_function to the student. In each class, he assists_
_students. He corrects and review the_
_with the student. He is able to assist in all these_
_teaching social studies, essay writing or math. He_

GENERAL COMMENTS: _helps students to learn or review the exam_
_needed for the TASC / RA / RA to the_
_complete the American Outlook_
_He needed will go over the_
_different subject concepts_
_average study._

_____
INMATE'S SIGNATURE

_____    _Teacher_    _____
EMPLOYEE'S SIGNATURE    TITLE    DATE

DISTRIBUTION:  White - Guidance Unit,  Yellow - Inmate,  Pink - Evaluator

FORM 3250 (7/11)          STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

_Please give..._

CORRECTIONAL FACILITY  Mid State          NAME OF PROGRAM  HSE 1

NAME  Cummings, Nagin     DIN  13 A 3859  HOUSING UNIT  1F   DATE: 06-22

CHECK ONE:

| | | |
|---|---|---|
| PAY INCREASE | _____ | READING LEVEL  9.0  H.S. equ... |
| PAY DECREASE | _____ | GED OR H.S. DIP.  YES  X  NO ___ |
| GENERAL EVALUATION | _____ | DATE ENTERED PROG.  03/16/20... |
| FINAL EVALUATION | X | PAY ITEM NUMBER  562014 |

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

Inmate Cummings was in Pre-HSE and took the
02/20 reading and math TABE. He
achieved high school equivalence level in
both. He took the URA and passed
He took the 03/20...
He was promoted to HSE class. He
was in class eight... a day.
He passed the TASC and earned
his HSE diploma.

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

GENERAL COMMENTS:

_____

inmate unavailable
INMATE'S SIGNATURE

_____     Teacher     06-22-20...
EMPLOYEE'S SIGNATURE     TITLE     DATE

DISTRIBUTION:  White - Guidance Unit,  Yellow - Inmate,  Pink - Evaluator

FORM 3250 (7/11)                STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

# INMATE PROGRESS REPORT

CORRECTIONAL FACILITY _Mid State_                          NAME OF PROGRAM _HSE 1_

NAME: _Cummings, Najay_          DIN _11A 2850_   HOUSING UNIT _26_   DATE: _11/08/___

CHECK ONE:

PAY INCREASE _____        READING LEVEL _IPA - teacher aide_

PAY DECREASE _____        GED OR H.S. DIP.   YES _X_   NO ___

GENERAL EVALUATION _X keep up work_   DATE ENTERED PROG. _11/16/2020_

FINAL EVALUATION _____      PAY ITEM NUMBER _562404_

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

_Incarcerated Individual Cummings in HSE PM IPA teacher aide. It_
_is also the HSE AM IPA teacher aide. The IPA duties are to_
_complete paperwork and to assist students. Incarcerated Indiv_
_Cummings does both areas well. He is neat, precise and timely_
_with paperwork. He assist students in the_

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED: _classroom as good and reviews material_
_with the students. He helps tutor review skills needed for the_
_TABE / RA / TASC. He also works with students to learn new_
_concepts they are required to know. students request and_
_from him Cummings is well on his way to a student in_

GENERAL COMMENTS: _good displays a positive attitude. He is well versed in all_
_He displays a positive attitude. He is well versed in all_
_subjects. writing social studies. Cummings teaching various_

_____        INMATE'S SIGNATURE

_Yang_ _Teacher_        EMPLOYEE'S SIGNATURE        TITLE        DATE

DISTRIBUTION: White - Guidance Unit, Yellow - Inmate, Pink - Evaluator

FORM 3250 (7/11)

STATE OF NEW YORK - DEPARTMENT OF CORRECTIONS AND COMMUNITY SUPERVISION

## INMATE PROGRESS REPORT

CORRECTIONAL FACILITY M. AState_____  NAME OF PROGRAM HCL 1_____

NAME: Cummings, Mayoy_____ DIN _____ HOUSING UNIT ___ DATE: 11/ /

CHECK ONE:

PAY INCREASE _____                    READING LEVEL. IPA - teach

PAY DECREASE _____                    GED OR H.S. DIP.  YES X  NO ___

GENERAL EVALUATION & top my goals          DATE ENTERED PROG.  03/01/202

FINAL EVALUATION _____              PAY ITEM NUMBER  56.401

| | EXCELLENT | ABOVE AVERAGE | AVERAGE | BELOW AVERAGE | POOR |
|---|---|---|---|---|---|
| ATTENDANCE / PUNCTUALITY | excellent | | | | |
| INTEREST IN PROGRAM ASSIGNMENT | excellent | | | | |
| EFFORT AND INITIATIVE | | | | | |
| ATTITUDE TOWARD PEERS | | | | | |
| ATTITUDE TOWARD AUTHORITY FIGURES | | | | | |
| FOLLOWS RULES AND SAFETY PRACTICES | | | | | |
| ABILITY TO FOLLOW DIRECTIONS | | | | | |
| QUALITY OF WORK | | | | | |
| DISPLAYS SELF CONTROL | | | | | |
| DEPENDABILITY | | | | | |
| APTITUDE / EMPLOYABILITY | | | | | |

EXPLAIN INMATE'S ACCOMPLISHMENTS WHILE IN YOUR PROGRAM OR WORK DETAIL:

LIST JOB TITLES, OR SPECIAL SKILLS ACQUIRED:

GENERAL COMMENTS:

INMATE'S SIGNATURE

EMPLOYEE'S SIGNATURE                    TITLE                    DATE

DISTRIBUTION:  White - Guidance Unit,  Yellow - Inmate,  Pink - Evaluator

```
09/23/25     SIPY010     INMATE PROGRAM ASSIGNMENT     *FPMS*     PAGE 001

                    CURRENT FACILITY: 480 - MID-STATE

          DIN: 19A3859    NAME: CUMMINGS, NAJAY
```

TITLE PHASE III TS ADV ASSESSMENT     ITEM 692112   FAC MID-STATE
 SHOP PHASE III TS ADV ASSESSMENT     FROM 01/27/25 TO 02/09/25 A.M.    $  .0000
END REASON: PROGRAM NO LONGER IN OPERATION                             MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                         ITEM 542240   FAC MID-STATE
 SHOP 2 YEAR DEGREE PROGRAM           FROM 11/04/24 TO 04/07/25 P.M.    $  .1583
END REASON: AUTO CLOSED BY INMATE ACCOUNTS                             MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                         ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 04/29/24 TO 11/03/24 A.M.    $  .0750
END REASON: REMOVED FOR GOOD OF DEPARTMENT                             MTWTFSS
                                                                       YYYYY___

TITLE GROUP LDR ASST. (ANY ASSIGN)    ITEM 176303   FAC MID-STATE
 SHOP GYMNASIUM                       FROM 04/01/24 TO 04/07/25 EVENING $  .2000
END REASON: AUTO CLOSED BY INMATE ACCOUNTS                             MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                         ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 02/13/23 TO 04/28/24 P.M.    $  .0750
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYYYY___

TITLE PORTER I                        ITEM 126108   FAC MID-STATE
 SHOP G BLOCK (2)                     FROM 11/21/22 TO 03/31/24 EVENING $  .1000
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                         ITEM 542901   FAC MID-STATE
 SHOP 2 YEAR DEGREE PROGRAM           FROM 11/21/22 TO 11/03/24 EVENING $  .0000
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYY_____

TITLE THERAPEUTIC PARTICIPANT II      ITEM 793212   FAC MID-STATE
 SHOP AGGRESSION REPLC TRNG           FROM 09/26/22 TO 11/20/22 A.M.    $  .1583
END REASON: SUCCESSFULLY COMPLETED PROGRAM                             MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                         ITEM 542901   FAC MID-STATE
 SHOP 2 YEAR DEGREE PROGRAM           FROM 01/17/22 TO 11/20/22 EVENING $  .0000
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYYYY___

TITLE INCARCERATED PROGRAM ASSOCIATE  ITEM 562401   FAC MID-STATE
 SHOP HIGH SCHOOL EQUIVALENCY (1)     FROM 03/01/21 TO 09/25/22 A.M.    $  .2583
END REASON: REACHED ON WAITING LIST                                    MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                         ITEM 041007   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 02/15/21 TO 02/28/21 A.M.    $  .0750
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYYYY___

```
09/23/25      SIPY010      INMATE PROGRAM ASSIGNMENT      *FPMS*      PAGE 002

                  CURRENT FACILITY: 480 - MID-STATE

            DIN: 19A3859    NAME: CUMMINGS, NAJAY

TITLE STUDENT                        ITEM 547901   FAC MID-STATE
 SHOP CORRESP COURSE-POST 2ND/EXAM    FROM 02/15/21 TO 01/16/22 EVENING $  .0000
END REASON: LATERAL PROGRAM CHANGE                                      MTWTFSS
                                                                       YYYYY___

TITLE INCARCERATED PROGRAM ASSOCIATE ITEM 562404   FAC MID-STATE
 SHOP HIGH SCHOOL EQUIVALENCY (1)     FROM 11/16/20 TO 02/12/23  P.M.   $  .2583
END REASON: SUCCESSFULLY COMPLETED PROGRAM                             MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                        ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 11/02/20 TO 11/15/20  P.M.   $  .0750
END REASON: LATERAL PROGRAM CHANGE                                     MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                        ITEM 447204   FAC MID-STATE
 SHOP GENERAL BUSINESS                FROM 11/02/20 TO 02/14/21  A.M.   $  .1583
END REASON: SUCCESSFULLY COMPLETED PROGRAM                             MTWTFSS
                                                                       YYYYY___

TITLE INCARCERATED PROGRAM ASSOCIATE ITEM 697409   FAC MID-STATE
 SHOP IPA TRAINING                    FROM 10/19/20 TO 11/01/20 AM/PM   $  .2416
END REASON: SUCCESSFULLY COMPLETED PROGRAM                             YY_____

TITLE STUDENT                        ITEM 447207   FAC MID-STATE
 SHOP GENERAL BUSINESS                FROM 09/07/20 TO 10/18/20  A.M.   $  .1583
END REASON: REACHED ON WAITING LIST                                   MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                        ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 07/20/20 TO 09/06/20  A.M.   $  .0750
END REASON: REACHED ON WAITING LIST                                   MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                        ITEM 547901   FAC MID-STATE
 SHOP CORRESP COURSE-POST 2ND/EXAM    FROM 07/20/20 TO 10/18/20 EVENING $  .1583
END REASON: REACHED ON WAITING LIST                                   MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                        ITEM 547901   FAC MID-STATE
 SHOP CORRESP COURSE-POST 2ND/EXAM    FROM 07/13/20 TO 07/19/20  P.M.   $  .0000
END REASON: LATERAL PROGRAM CHANGE                                    MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                        ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 06/29/20 TO 07/19/20 AM/PM   $  .0750
END REASON: LATERAL PROGRAM CHANGE                                    MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                        ITEM 041859   FAC MID-STATE
 SHOP UNEMPLOYED/UNASSIGNED (1)       FROM 06/15/20 TO 06/28/20  A.M.   $  .0750
END REASON: LATERAL PROGRAM CHANGE                                    MTWTFSS
                                                                       YYYYY___
```

```
09/23/25      SIPY010      INMATE PROGRAM ASSIGNMENT      *FPMS*      PAGE 003

                    CURRENT FACILITY: 480 - MID-STATE

              DIN: 19A3859    NAME: CUMMINGS, NAJAY

TITLE STUDENT                       ITEM 562214    FAC MID-STATE
 SHOP HIGH SCHOOL EQUIVALENCY (1)   FROM 03/16/20 TO 06/14/20   A.M.    $  .1583
END REASON: SUCCESSFULLY COMPLETED PROGRAM                             MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                       ITEM 447224    FAC MID-STATE
 SHOP GENERAL BUSINESS              FROM 12/23/19 TO 06/28/20   P.M.    $  .1583
END REASON: PROGRAM NO LONGER IN OPERATION                            MTWTFSS
                                                                       YYYYY___

TITLE STUDENT                       ITEM 525207    FAC MID-STATE
 SHOP PRE-HIGH SCHOOL EQUIVALENCY(4) FROM 12/23/19 TO 03/15/20   A.M.  $  .1583
END REASON: PROMOTED                                                  MTWTFSS
                                                                       YYYYY___

TITLE PHASE-I TS                    ITEM 690006    FAC MID-STATE
 SHOP PHASE I TS                    FROM 12/16/19 TO 12/22/19 AM/PM    $  .1000
END REASON: SUCCESSFULLY COMPLETED PROGRAM                            MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                       ITEM 036859    FAC MID-STATE
 SHOP FACILITY ORIENTATION          FROM 12/09/19 TO 12/15/19 AM/PM    $  .0750
END REASON: SUCCESSFULLY COMPLETED PROGRAM                            MTWTFSS
                                                                       YYYYY___

TITLE UNKNOWN                       ITEM 013296    FAC DOWNSTATE
 SHOP RECEPTION (13)                FROM 11/11/19 TO 12/05/19 AM/PM    $  .0750
END REASON: AUTO CLOSED BY LOCATOR FILE                               MTWTFSS
                                                                       YYYYY___
```